**Brenda S. WEBBER, Appellant,**

v.

**SECRETARY, HEALTH & HUMAN SERVICES, Appellee.**

**No. 85–1403.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1985.

Decided Feb. 13, 1986.

---

294

Murrey L. Grider, Pocahontas, Ark., for appellant.

Virginia J. Cronan, Dept. of Health & Human Services, Baltimore, Md., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

Brenda Webber appeals from the district court's [1] order affirming the Secretary of Health and Human Services' denial of Webber's application for supplemental security income (SSI) benefits based on disability under section 1602 of the Social Security Act, 42 U.S.C. § 1381a (West Supp.1985). Webber argues on appeal that the Appeals Council improperly rejected the Administrative Law Judge's (ALJ) findings that she suffers from nonexertional as well as exertional impairments and that the Council

therefore erroneously relied on the Medical-Vocational Guidelines in determining that she is not disabled. Webber further contends that the Appeals Council improperly reviewed the ALJ's decision on its own motion. Although we reject Webber's claim that the Appeals Council had no basis for reviewing the ALJ's decision,[2] we agree that the Appeals Council's decision to deny Webber SSI benefits is not supported by substantial evidence on the record as a whole. We therefore reverse the decision of the district court.

**Background**

Brenda Webber is a thirty-seven-year-old woman with an eighth grade education and no vocational training. Webber was last employed in January 1981 as a part-time attendant at a laundromat. She alleges she became disabled on February 15, 1981, because of diabetes, high blood pressure, a heart murmur, and pain in her back, hips, legs, and feet.

Webber filed this application for SSI benefits on March 31, 1982.[3] Her application was denied administratively, both initially and on reconsideration. On March 9, 1984, a full hearing was held before an administrative law judge at which Webber and her sister-in-law, Marilyn Cantrell, testified.[4] At the hearing, Webber testified that she is an insulin-dependent diabetic and has trouble with her back, hips, legs, and feet. She stated that she tries to do her own housework and look after her two-year-old son, but that she "can't get around too good." Webber further testified that when she starts to walk after sitting too much, her

---

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

2. Webber's claim that there is no basis for the Appeals Council's review of the ALJ's decision is clearly without merit. As we stated in *Baker v. Heckler,* 730 F.2d 1147, 1149–50 (8th Cir.1984), the Appeals Council may review an ALJ's decision on the Council's own motion even though the case does not fall within one of the categories set forth in 20 C.F.R. § 404.970(a) (1985), the regulation governing Appeals Council review.

3. Webber had previously applied for SSI benefits on September 30, 1980. This application was denied administratively and Webber did not appeal.

4. A hearing before an ALJ had initially been held on September 23, 1982. The ALJ issued a decision finding that Webber was not disabled. The Appeals Council denied review of the ALJ's decision and Webber appealed to the district court. Because the Social Security Administration could not produce a transcript of the September 1982 hearing, the district court remanded the case for a de novo hearing before an ALJ.

hip sometimes gives out and she almost falls. Webber has to rest after vacuuming two of the four rooms in her apartment because vacuuming hurts her back. Webber stated that she is in pain most of the day and that on a scale of zero to ten, with ten representing the most severe pain she has ever experienced, she experiences a pain of approximately seven every day. Webber also stated that she had to repeat the seventh grade and that she dropped out of school when she learned she would have to repeat the eighth grade. She further testified that she has trouble learning and following instructions, that she is easily confused, and that she has occasional blackout spells.

Marilyn Cantrell, Webber's sister-in-law, testified that she goes over to Webber's apartment once a day to help Webber with her housework. Cantrell also stated that if Webber is sitting on the floor, Webber often needs help getting up. Finally, Cantrell noted that Webber becomes easily confused and does not understand instructions as well as most people do.

The report of Dr. Lopez, an orthopedic specialist, stated that Webber suffers from a chronic lumbosacral strain and that other symptoms he had observed might indicate degenerative disc disease. Dr. Lopez's report indicated no restrictions on Webber's ability to sit, stand, or walk, but stated that she should not lift more than twenty to twenty-five pounds or bend, push, or pull on a repetitive basis. The report of a psychologist revealed that Webber has a verbal I.Q. of eighty-seven, a nonverbal I.Q. of eighty-one, and a full-scale I.Q. of eighty-three. The report concluded that Webber functions at a low-average intellectual range, but that there was no evidence of psychosis. The report of Dr. Guthrie, a consultative psychiatrist, indicated that Webber suffers from hypochondriasis, psychogenic amnesia, and a possible dependent personality disorder. The report further stated that Webber's intellectual ability is mildly impaired, that her emotional reaction is depressed and lethargic, that her thought content is primarily concerned with her physical symptoms and blackout spells, and that she is excessively dependent on others.

Based on the testimony of Webber and Cantrell, the reports of the consultative physicians, and his own observation of Webber, the ALJ issued a recommended decision finding Webber disabled. The Appeals Council reviewed the ALJ's decision on its own motion and, after considering the record, rejected the ALJ's determination that Webber was disabled. The Appeals Council agreed with the ALJ that Webber suffers from chronic lumbosacral strain and hypochondriasis and that, because those impairments are "severe," Webber is unable to perform her past relevant work as a laundry attendant. The Appeals Council determined, however, that Webber's complaints of pain and blackout spells "of the severity alleged" are not credible and that Webber's other nonexertional limitations do not "significantly affect" her exertional capacity. After finding that Webber has the residual functional capacity to perform at least light work, the Appeals Council applied Rules 202.17 and 202.18 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the Guidelines),[5] and entered a finding of "not disabled." The district court affirmed the denial of benefits and this appeal followed.

## Discussion

■ Although our role on review is to determine whether the Secretary's decision is supported by substantial evidence on the record as a whole, this decision is subject to "especially careful scrutiny" where, as in this case, the Appeals Council has rejected the ALJ's credibility findings. *Day v. Heckler,* 781 F.2d 663, 665 (8th Cir.1986) (quoting *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984)). The rationale behind this heightened scrutiny is that "evidence supporting a conclusion may be less substantial when [an agency reaches a decision contrary to that reached by] an impartial,

5. The Guidelines are applicable to SSI claims      pursuant to 20 C.F.R. § 416.969 (1985).

experienced examiner who has observed the witnesses and lived with the case." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951).

The ALJ and the Appeals Council agreed that Webber is unable to perform her past relevant work as a laundry attendant because of her "severe" impairments. Once this finding was made, the burden of proof shifted to the Secretary to show the existence of other jobs in the national economy Webber is capable of performing. *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985). If the claimant's impairments are solely exertional, the Secretary may fulfill this burden by reference to the Medical-Vocational Guidelines. *Id.*

> If, however, the claimant suffers from a combination of exertional and nonexertional impairments and the Guidelines indicate that he or she is not entitled to a finding of disability based solely on exertional impairments, the ALJ must then consider the extent to which the claimant's work capability is further diminished by his or her nonexertional impairments. Where the claimant's relevant characteristics differ in any material respect from those characteristics contemplated by the Guidelines, the Guidelines may not be applied. Instead, the Secretary must produce expert vocational testimony or other similar evidence to establish that there are jobs available in the national economy for a person with the claimant's characteristics.

*Id.* at 795–96 (citations omitted).

Contrary to the findings of the ALJ, the Appeals Council determined that Webber's alleged nonexertional impairments of pain, blackout spells, mental limitations and psychological problems do not significantly affect her exertional capability. The Appeals Council therefore applied the Guidelines, which directed a finding of "not disabled."

After carefully reviewing the entire record before us, we conclude that the Appeals Council's finding that Webber's nonexertional impairments do not affect her exertional capabilities is not supported by substantial evidence on the record as a whole. The Appeals Council rejected the ALJ's finding that Webber's complaints of pain were consistent with the clinical diagnosis of her physical impairments and therefore credible. The only reason given by the Council for disregarding the ALJ's finding on pain was its determination that the orthopedic specialist who examined Webber "indicated that [Webber] retained the functional capacity for light work with consideration given to pain." The Appeals Council also determined, contrary to the ALJ's finding, that Webber's complaints of blackout spells were not credible. In support of this finding, the Council noted that two physicians who had examined Webber did not mention Webber's allegations of blackout spells in their reports. The Council also inferred from Dr. Guthrie's psychiatric report that he considered Webber capable of working despite these blackout spells.

The inferences the Appeals Council draws from Webber's medical reports appear to be tenuous in light of the testimony of Webber and Cantrell, the ALJ's assessment of their credibility, and the other evidence contained in the medical reports. We need not base our decision on this point, however, because we find that the Appeals Council's consideration of Webber's mental impairments and other psychological disorders was wholly inadequate and that these impairments alone preclude application of the Guidelines.

The ALJ found that Webber's "diminished intellectual abilities along with her psychogenic amnesia and her dependent personality disorder would significantly restrict her ability to understand, carry out, and remember instructions." The Appeals Council apparently rejected the ALJ's finding on this issue because the Council determined that Webber's "nonexertional limitations do not significantly affect her residual functional capacity for light work." The only evidence that would in any way support the Council's rejection of the ALJ's finding that Webber's mental impairments further restrict her exertional capacity is

the Council's reference to Social Security Ruling 82–55, S.S.R. 82–55 (CE 1982), Soc. Sec.Rep.Serv., Rulings 1975–1982, at 753–57 (West 1983), providing that a claimant is not under a severe impairment if she has an I.Q. of eighty or greater in all major areas of intellectual functioning.

■ Ruling 82–55 does not provide authority for the Appeals Council's finding on this issue. This ruling lists impairments that, in and of themselves, are deemed "not severe." As the Appeals Council correctly noted, this ruling states that an I.Q. of eighty or greater in all major areas of intellectual functioning is a "nonsevere" impairment. Webber's medical records indicate that she has a verbal I.Q. of eighty-seven, a nonverbal I.Q. of eighty-one, and a full-scale I.Q. of eighty-three. She thus has an I.Q. of eighty or greater in all major areas of intellectual functioning.[6] If reduced intellectual functioning were the *only* impairment from which Webber allegedly suffered, the Appeals Council could have properly relied on Ruling 82–55 to conclude that Webber is not disabled, because an individual who does not have a "severe" impairment is considered "not disabled" without further inquiry. *See* 20 C.F.R. § 416.920(c) (1985). The Appeals Council determined, however, that although Webber's physical impairments do not render her disabled without consideration of her vocational factors, *see* 20 C.F.R. § 416.920(d), these impairments are nonetheless "severe." Ruling 82–55 specifically states that if a nonsevere impairment is imposed on one or more severe impairments, the combined effect of all impairments must be considered in assessing a claimant's residual functioning capacity. S.S.R. 82–55 (CE 1982), Soc.Sec.Rep.Serv., Rulings 1975–1982, at 755 (1983); *see also* 20 C.F.R. § 416.923 (1985); *Reinhart v. Secretary, Health & Human Services,* 733 F.2d 571, 573 (8th Cir.1984); *Clark v. Heckler,* 733 F.2d 65, 69 (8th Cir.1984).

■ There is no indication that the Appeals Council considered the extent to which Webber's mental limitations further restrict her exertional abilities. Had the Appeals Council properly done so, we are convinced the Council would have concluded that Webber's diminished intellectual abilities do affect her exertional capability. Webber's nonverbal I.Q. of eighty-one is only two points above an I.Q. that might constitute a "severe" impairment in and of itself.[7] Moreover, after questioning Webber at the March 1984 hearing, the ALJ stated: "And, although she is classified according to the Weschler as low average or dull normal or what you want to call it. [sic] I think maybe the assessment is a little bit higher than it really should be." Furthermore, the psychiatrist who examined Webber noted that her intellectual ability is mildly impaired, her interests and general fund of knowledge is limited, and her ability to make personal adjustments is moderately impaired.

■ Not only did the Appeals Council fail to consider the extent to which Webber's diminished intellectual capacity further restricts her exertional abilities, but the Council's treatment of another of Webber's alleged nonexertional impairments is wholly contradictory. The Appeals Council expressly found that Webber has two "se-

---

6. Where more than one I.Q. is customarily derived from the test administered, that is, where verbal, nonverbal, and full-scale I.Q.'s are determined as with the Wechsler Adult Intelligence Scale (the test used here), the lowest of the I.Q.'s should be used in applying the Social Security regulations. *See Smith v. Heckler,* 735 F.2d 312, 317 n. 2 (8th Cir.1984); 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(B)(4) (1985). Webber's nonverbal I.Q. of eighty-one is thus the reference point for assessing Webber's mental limitations under Social Security Ruling 82–55.

7. A claimant with an I.Q. of 59 or less, or an I.Q. of 60 to 69 inclusive and an additional physical or mental impairment, is deemed disabled without consideration of vocational factors. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.-05(B) & (C) (1985); 20 C.F.R. § 416.920(d) (1985). As indicated above, a claimant whose *only* alleged impairment is an I.Q. of 80 or greater is not disabled. S.S.R. 82–55 (CE 1982), Soc.Sec.Rep.Serv., Rulings 1975–1982, at 757 (1983). It follows that a claimant whose only alleged impairment is an I.Q. of 70 to 79 inclusive, may be disabled after consideration of vocational factors.

vere" impairments: chronic lumbosacral strain *and* hypochondriasis.[8] Hypochondriasis, like other psychological disorders, is a nonexertional impairment. *See Parsons v. Heckler*, 739 F.2d 1334, 1337, 1339 (8th Cir.1984); *Reinhart v. Secretary, Health & Human Services*, 733 F.2d at 572–73. We fail to comprehend how the Appeals Council could possibly have determined that Webber's hypochondriasis constitutes a "severe" impairment and yet concluded that this nonexertional impairment does not significantly affect her exertional abilities.

Although we cannot say on this record that Webber's mental and psychological limitations coupled with her exertional limitations render her disabled without consideration of vocational factors, we conclude that her nonexertional impairments do affect her exertional capabilities. The Appeals Council thus improperly referred to the Medical-Vocational Guidelines to meet its burden of proving that jobs exist in the national economy that Webber is capable of performing. *See Day v. Heckler*, 781 F.2d 663, 665 (8th Cir.1986). Instead, because Webber's relevant characteristics differ from those characteristics contemplated by the Guidelines, the Secretary must establish through the testimony of a vocational expert or other similar evidence that such jobs exist before concluding that Webber is not disabled. *See Clark v. Heckler*, 733 F.2d at 69. Accordingly, we reverse the judgment of the district court with instructions to remand it to the Secretary for further proceedings consistent with this opinion.

---

**8.** A morbid concern about one's own health and exaggerated attention to any unusual bodily or mental sensations. T. Stedman, Stedman's Medical Dictionary at 679 (5th unabridged lawyer's ed. 1982).