812 F.2d 1406
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clarence CRAFT, Plaintiff-Appellant,
v.
HUMAN SERVICES, Defendant-Appellee.
 No. 85-4042.
 United States Court of Appeals, Sixth Circuit.
 Jan. 22, 1987.
 
 Before MARTIN, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Clarence Craft appeals from the order of the district court affirming the final decision of the Secretary of Health and Human Services denying his application for disability insurance benefits and supplemental security income. Because we conclude that the Secretary's finding that plaintiff does not suffer from a nonexertional impairment is not supported by substantial evidence, we reverse and remand for a non-guideline determination.
 
 I.
 
 2
 Plaintiff filed applications for supplemental security income and disability insurance benefits on January 25, 1983. He stated that he became unable to work on December 28, 1982, as a result of high blood pressure, emphysema, and restrictive lung disease. The applications were denied initially and upon reconsideration. Plaintiff requested a de novo hearing before an Administrative Law Judge, which was conducted on July 13, 1983.
 
 
 3
 At the time of the hearing, plaintiff was fifty-two years old, was six feet tall, and weighed approximately 255 pounds. He has a fifth grade education, can read a little, and sign his name. He has been employed as a welder, carpenter, laborer, foundry worker, and dairy farm worker. He complains of high blood pressure, emphysema, and lung disease. Despite his cardiopulmonary difficulties, plaintiff continues to smoke at least half a pack of cigarettes a day.
 
 
 4
 Plaintiff was the only witness who testified at his administrative hearing. He testified that he is unable to work because his face, feet, and hands swell and because he suffers from shortness of breath. He complained of weakness and back pain and further testified that he could walk only fifty feet without resting. He stated that he had difficulty climbing stairs, but admitted that he could probably lift 100 pounds if his abilities were not limited by his breathing impairment. He also testified that he could lift ten pounds, but not every five minutes "on an hourly thing."
 
 
 5
 Despite these impairments, plaintiff testified that he had the ability to perform some types of activity. He testified that he could drive a car with an automatic transmission because such activity required only the use of the right leg. Plaintiff further testified that he can play pool, vacuum, and walk his doberman. Aside from these activities, plaintiff's life is sedentary. He does not assist with household chores such as dishwashing, laundry, or grocery shopping, and spends most of his time watching television and sitting on the patio.
 
 
 6
 Plaintiff stated that he could not return to his work as a carpenter because he could not stand the heat. With respect to his job as a welder at Columbus Steel Drum, plaintiff testified that he could not return to that employment because he would be unable to tolerate the chemical fumes, which would aggravate his persistent cough.
 
 
 7
 Plaintiff's testimony is supplemented in the administrative record by reports from several physicians. Plaintiff was admitted to Doctors Hospital in Columbus, Ohio, on April 26, 1982. The discharge diagnosis was right middle lobe pneumonia, complicated by chronic obstructive lung disease with hypoxia and electrolyte imbalance. The discharge summary indicated that plaintiff "responded remarkedly [sic] well in the hospital." He was discharged on May 5, 1982, "in an improved condition on long-term antibiotic therapy." Joint Appendix at 110-11.
 
 
 8
 The results of a pulmonary function test performed on August 4, 1982, indicated that plaintiff suffered from shortness of breath and coughing, but not wheezing. Plaintiff's FVC was 68% of normal, FEV-1 was 45.1% of normal, and MVV was 20.8% of normal. A second pulmonary function test was performed on January 20, 1983. Once again, there was indication that plaintiff was short of breath and suffered from coughing; however, once again, no wheezing was exhibited. The results of this test showed an FVC of 66.3% of normal, an FEV-1 of 51.8% of normal, and an MVV of 42% of normal.
 
 
 9
 To support his claim of disability, plaintiff relied heavily upon the opinion of his treating physician, Dr. John Guluzian. On January 13, 1983, Dr. Guluzian indicated that plaintiff was under treatment for "various medical problems, including hypertension, emphysema, and restrictive lung disease." He indicated that plaintiff would continue to be disabled until February 1, 1983. Seven days later, on January 20, 1983, Dr. Guluzian indicated that plaintiff was permanently and totally disabled. It is unclear whether Dr. Guluzian had the benefit of the results of plaintiff's second pulmonary function test at the time he reached the conclusion as to total disability.
 
 
 10
 In a report dated February 8, 1983, Dr. Guluzian summarized plaintiff's condition as follows:
 
 
 11
 At the time of the most recent basic medical exam of 1/20/83, a seventh grade educational level was noted and prognosis was poor for employability. This patient is permanently and totally disabled from all gainful employment due to lack of training and his many chronic medical conditions as noted above, and he will remain so for one year or more.
 
 
 12
 Joint Appendix at 141. Dr. Guluzian also noted that plaintiff was a normal white male, six feet tall, weighing 258 pounds, with erect posture and steady gait. Hearing, speech, and vision were adequate. Heart rate and rhythm were regular. Plaintiff exhibited some expiratory wheezing, and his blood pressure was 160/102. No deformity or limitation of motion in the back or extremities was noted. Dr. Guluzian indicated that plaintiff's most recent chest X-ray exhibited "fibrous changes in the minor fissure on the right as well as some minimal left ventricular enlargement and degenerative changes in the dorsal spine."
 
 
 13
 A request for medical review was presented by the state agency to Dr. Sara Long, a pulmonary disease specialist, on February 11, 1983. After reviewing plaintiff's medical records, Dr. Long concluded that "claimant is capable of at least a full range of medium work activities." Joint Appendix at 146.
 
 
 14
 On March 22, 1983, plaintiff was examined by Dr. Kirk Hilliard, a member of Setnar, Nagy and Associates. On page one of Dr. Hilliard's report, forced expiratory wheezing is indicated. However, on page two of the report, the general review of the respiratory system indicated the absence of wheezing. Dr. Hilliard indicated that plaintiff was suffering from chronic obstructive pulmonary disease, chronic bronchitis, primary hypertension, and exogenous obesity. He repeated this diagnosis in a letter to Dr. Guluzian dated April 12, 1983.
 
 
 15
 In a report dated July 12, 1983, Dr. Guluzian repeated the contention that plaintiff was permanently and totally disabled. He indicated that plaintiff was suffering from chronic obstructive pulmonary disease, chronic bronchitis, restrictive lung disease, hypertension, exogenous obesity, and hypokalemia. He summarized the results of X-rays performed on June 17, 1983, as follows:
 
 
 16
 X-rays performed on 6/17/83, of the left knee, lumbar spine and pelvis revealed degenerative changes in the intercondyloid eminence of the proximal tibial plateau. Studies of the low back revealed some minimal degenerative changes in the anterior and lateral borders of the lumbar bodies with some facet arthritis in the lumbar spine. Degenerative changes were also noted in the acetabular rims of the pelvis.
 
 
 17
 Once again, Dr. Guluzian indicated that plaintiff's lack of education and age contributed to his conclusion that plaintiff was totally and permanently disabled. In an accompanying physical capacity evaluation, Dr. Guluzian noted that plaintiff could stand or walk for one hour in an eight-hour work day and sit for half an hour. He indicated that plaintiff could do no lifting and could use his hands for repetitive grasping and fine manipulation, but not pushing and pulling. He also indicated that plaintiff could use his right leg for the operation of a foot control, but that plaintiff could not bend, squat, crawl, or climb. Finally, he concluded that plaintiff would be unable to work where there was poor ventilation, or an "increase in dust, fumes, smoke, etc."
 
 
 18
 Plaintiff was also examined by Dr. Warren Bertner, a psychologist. Dr. Bertner indicated that plaintiff's IQ of 79 "places him in the Borderline range of intelligence." Dr. Bertner concluded that "[a]nxiety may be a significant factor in his functioning and by report affects his ability to breathe effectively. A substantial history of alcohol consumption is not at this time considered a major factor in his functioning although further evaluation would be necessary to rule it out."
 
 
 19
 On the basis of this record, the ALJ concluded that plaintiff's lung disease "significantly limits lifting, carrying, bending, and climbing and is therefore 'severe' within the meaning of the regulations." Joint Appendix at 10. However, he also noted that "Mr. Craft's reduced intelligence (verbal IQ of 79) is not a 'severe' impairment and neither is his mild osteoarthritis in the knees, spine and pelvis, hypertension and obesity." He concluded that plaintiff's allegations of pain, weakness and fatigue were not credible, and that plaintiff retained the residual functional capacity to perform "at least light work." He discounted the opinion of Dr. Guluzian on the ground that the opinion was based on plaintiff's lack of training and not on objective medical findings. He also concluded that Dr. Guluzian's opinion was inconsistent with plaintiff's own testimony. Consequently, the ALJ concluded that "Appendix 2 directs the conclusion of 'not disabled' in this case." Joint Appendix at 11. Thus, plaintiff's application for benefits was denied.
 
 
 20
 The Appeals Council refused to review plaintiff's claim by letter dated January 25, 1984. Subsequently, on March 21, 1984, plaintiff filed an action in the United States District Court for the Southern District of Ohio. After considering cross-motions for summary judgment, the district court found that the decision of the Secretary was supported by substantial evidence and granted the defendant's motion for summary judgment affirming the decision of the Secretary. In this appeal, the following issues are raised for our consideration:
 
 
 21
 A. whether the ALJ accorded proper weight to the opinion of plaintiff's treating physician;
 
 
 22
 B. whether the ALJ erred in concluding that plaintiff is capable of performing "at least light work"; and
 
 
 23
 C. whether the ALJ properly applied the medical-vocational guidelines in determining that plaintiff was not disabled.
 
 II.
 A.
 
 24
 Plaintiff contends that the ALJ's determination should have been controlled by the opinion of his treating physician, Dr. Guluzian. As a general rule, the medical opinions of treating physicians are entitled to "substantial deference." King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 536 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983); Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). However, this is true "only if the treating physician's opinion is based on sufficient medical data." Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984); 20 C.F.R. Sec. 404.1529. An ALJ may discredit expert opinions that are based on improper criteria. See Odle v. Secretary of Health and Human Services, 788 F.2d 1158, 1161 (6th Cir.1985) (per curiam). Dr. Guluzian's evaluation considered not only medical criteria, but also his own determination of plaintiff's employability, based upon plaintiff's lack of training and education. Consequently, the ALJ properly discredited Dr. Guluzian's opinion. See O'Bryan v. Weinberger, 511 F.2d 68, 70 (6th Cir.1975) (per curiam). See also Odle, 788 F.2d at 1161.
 
 
 25
 Moreover, the Secretary is not bound by a treating physician's determination of disability. See King, 742 F.2d at 972-73. "Ultimately, the determination of disability is the prerogative of the Secretary, not the treating physician...." Houston, 736 F.2d at 367. See Kirk, 667 F.2d at 538.
 
 
 26
 Dr. Guluzian's determination is further discredited by the fact that it is inconsistent with other evidence in the record, most notably plaintiff's own testimony. For example, Dr. Guluzian indicated that plaintiff could only sit for half an hour during an eight-hour day. This is contrary to plaintiff's testimony indicating that he spends most of his time sitting on the porch or watching television. Dr. Guluzian indicated that plaintiff could do no lifting; however, plaintiff testified that he could lift 100 pounds if not for his breathing impairment and that he could lift ten pounds. Moreover, Dr. Guluzian's indication that plaintiff cannot bend is refuted by plaintiff's testimony that he can play pool and vacuum. Finally, Dr. Guluzian's opinion is refuted by Dr. Long's assessment of plaintiff's residual functional capacity.
 
 
 27
 This court has repeatedly held that the opinion of a consultative physician hired by the government to defend a disability claim ordinarily is entitled to less weight than that of a treating physician. See, e.g., Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir.1986); Sherrill v. Secretary of Health and Human Services, 757 F.2d 803, 805 (6th Cir.1985) (per curiam); Allen, 613 F.2d at 145. However, a treating physician's opinion is only entitled to such deference when based on appropriate medical criteria. See, e.g., Murphy, 801 F.2d at 185; Houston, 736 F.2d at 367; Kirk, 667 F.2d at 538. See also Harris v. Heckler, 756 F.2d 431, 437 (6th Cir.1985) (Wellford, J., dissenting) ("The treating physician's opinion ... is not binding on the Secretary, especially when other evidence brings into question its basis and reliability.").
 
 
 28
 In the final analysis, the ALJ's determination to discredit the opinion of Dr. Guluzian was appropriate. As the district court noted, "[n]ot only are [Dr. Guluzian's] opinions based upon vocational factors outside [his] area of expertise but they are greatly eroded by their inconsistency with both the other medical evidence of record and plaintiff's own testimony." District Court Opinion at 4. It is the Secretary, and not this court, who is authorized to resolve conflicts in the evidence. See, e.g., Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984); Kirk, 667 F.2d at 538; Wokojance v. Weinberger, 513 F.2d 210, 212 (6th Cir.), cert. denied, 423 U.S. 856 (1975).
 
 B.
 
 29
 Plaintiff contends that the ALJ's determination that he can perform light work is not supported by substantial evidence because Dr. Long concluded that he was able to perform medium work, and Dr. Guluzian concluded that he was permanently and totally disabled. Plaintiff contends that, by determining that he is capable of performing at least light work, the ALJ improperly "averaged out" these residual functional capacity assessments, despite the fact that there is no evidence to support this conclusion. The initial response to this contention is that "the responsibility for deciding ... residual functional capacity rests with the administrative law judge." 20 C.F.R. Sec. 404.1546. See Harris, 756 F.2d at 434-35; Kirk, 667 F.2d at 538. See also Townley v. Heckler, 748 F.2d 109, 113 (2d Cir.1984).
 
 
 30
 We must, of course, determine whether the Secretary's decision is based upon substantial evidence. In doing so, we must examine the evidence in light of the record as a whole, and "must take into account whatever in the record fairly detracts from its weight." Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). See Garner, 745 F.2d at 388. Under 42 U.S.C. Sec. 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 31
 The Social Security regulations define light work as follows:
 
 
 32
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities....
 
 
 33
 20 C.F.R. Sec. 404.1567(b). The Secretary's determination that plaintiff is capable of performing "at least light work" is supported by Dr. Long's residual functional capacity assessment and by plaintiff's testimony regarding his daily activity. Plaintiff testified that he is capable of lifting ten pounds. Although he testified that he can walk only fifty feet without resting and that he is unable to estimate the amount of time that he could stand in an eight-hour work day, the evidence does support a conclusion that plaintiff is capable of sitting for an eight-hour day and that he is able to use foot and hand controls. Although plaintiff testified that he experiences back pain when he sits, the ALJ properly discredited this testimony. The ALJ's conclusion is supported by X-ray results showing only minimal degenerative changes in plaintiff's lower back. Joint Appendix at 159. Furthermore, the ALJ's determination is also supported by plaintiff's testimony that he sits all day, as opposed to lying down to relieve any pain he might experience in his back.
 
 
 34
 Thus, the Secretary's determination as to plaintiff's residual functional capacity is supported by examination of the record as a whole. Dr. Long's residual functional capacity assessment is consistent with plaintiff's own testimony. This evidence is refuted only by Dr. Guluzian's assessment, which, as noted above, is not entitled to the deference generally accorded the opinion of a treating physician. Because the Secretary's finding as to residual functional capacity is supported by substantial evidence, it will not be disturbed by this court. See Garner, 745 F.2d at 387-88; Beavers, 577 F.2d at 387.
 
 C.
 
 35
 Finally, we must determine whether the Secretary erred by using the medical-vocational guidelines to reach a conclusion that plaintiff is not disabled. Plaintiff contends that the ALJ failed to give adequate consideration to his nonexertional impairments and that proper consideration of those impairments precludes application of the medical-vocational guidelines.
 
 
 36
 In Kirk this court discussed the proper application of the medical-vocational guidelines in disability proceedings. Initially, we noted "that only when the findings of fact as to each of the relevant components of the grid 'coincide' with the grid's definitions, do the guidelines direct a conclusion as to disability." 667 F.2d at 528. A non-guideline determination is required only where "the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level...." Kirk, 667 F.2d at 528-29. "[N]ot every malady of a 'nonexertional' nature rises to the level of a 'nonexertional impairment.' " Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir.1984) (per curiam). If it did, "any allegation of nonexertional limitations would preclude resort to the grid and thus frustrate the Congressional intention of simplifying and expediting the adjudicative process." Kirk, 667 F.2d at 537.
 
 
 37
 In the present case, the ALJ found that plaintiff was suffering from "no nonexertional limitations." Joint Appendix at 11. With respect to the contention that plaintiff's ability to work is limited by environmental factors, the ALJ found that plaintiff's complaints regarding shortness of breath were not wholly credible. This conclusion is supported by plaintiff's failure to lose weight and by his continuing ability to smoke at least half a pack of cigarettes a day.
 
 
 38
 Moreover, even if Dr. Guluzian's opinion as to environmental restrictions was credited, he noted only that plaintiff is "unable to work where there is poor ventilation, where there is increase in dust, fumes, smoke, etc." (emphasis supplied). "Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." Titles II and XVI: Capability to Do Other Work--The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, Social Security Ruling 83-13, Unemployment Insurance Reporter (CCH) p 14,534, at 1999-38 (January 1983). Consequently, we agree with the Secretary that plaintiff's environmental restrictions do not rise to the level of a nonexertional impairment.[1]
 
 
 39
 However, plaintiff also alleges that he suffers from a nonexertional limitation in the form of a mental impairment. Plaintiff was interviewed by Dr. Warren Bertner, who found that plaintiff had a full-scale IQ of 79. The ALJ found that this impairment was not severe and that plaintiff was suffering from no nonexertional limitations.
 
 
 40
 In Salmi v. Secretary of Health and Human Services, 774 F.2d 685 (6th Cir.1985), we held "that the Secretary considers IQs less than 80 as qualifying as a severe impairment." Id. at 693. In the present case, given that the evidence regarding plaintiff's mental capacity is uncontroverted, it must be concluded that plaintiff's mental impairment is severe. "We fail to comprehend how the [Secretary] could possibly ... determine[] that [a claimant's impairment] constitutes a 'severe' impairment and yet conclude[] that this nonexertional impairment does not significantly affect [his] exertional abilities." Webber v. Secretary, Health and Human Services, 784 F.2d 293, 299 (8th Cir.1986); see also Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 796 (6th Cir.1986) (indicating that existence of a severe nonexertional impairment precludes application of the grid).
 
 
 41
 Because plaintiff suffers from a severe nonexertional impairment, the ALJ erred in applying the medical-vocational guidelines to direct a finding of nondisability. See Damron v. Secretary of Health and Human Services, 778 F.2d 279, 282 (6th Cir.1985); Kirk, 667 F.2d at 537. Therefore, this case must be remanded to the Secretary for a non-guideline determination. See Kirk, 667 F.2d at 528-29.
 
 III
 
 42
 Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 This is not to say that plaintiff's environmental restrictions should not be considered on remand. "[The ALJ] cannot fragmentize [a claimant's] several ailments and the medical opinions regarding each of them so that he fails properly to evaluate their effect in combination upon [the claimant]." Colwell v. Gardner, 386 F.2d 56, 74 (6th Cir.1967)