**Walter W. SALTS, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

**No. 91–2883.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 25, 1991.

Decided March 11, 1992.

the trial court as part of the original case so that it could be made part of the original appeal.

Timothy Harlan, Columbia, Mo., for appellant.

Edwin Brzezinski, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

Walter W. Salts appeals from the district court's grant of summary judgment to the Secretary of Health and Human Services (Secretary) in Salts's action for judicial review of the Secretary's decision to deny

Salts's claim for Social Security disability insurance benefits and Supplemental Security Income (SSI). We reverse and remand to the district court with instructions to remand to the Secretary. On remand, the Secretary shall complete the record and make a new determination of Salts's eligibility for benefits.

## Background

Salts is a 37-year-old male with an eleventh-grade education. He has worked at various times as a laborer, sawyer, dishwasher, auto mechanic, and security guard. Since 1970, Salts has earned a total of only $14,329.61.[1] He was most recently employed as a sawyer at a splitting mill from April 1988 until November 1988. At the time of Salts's application for Social Security benefits, he was receiving unemployment benefits of $78 per week from the State of Missouri. Salts alleges disability beginning on October 10, 1986 due to ailments including residuals of childhood poliomyelitis, an injury to his left wrist, ulcers, "nerve problems," a breathing problem, and high-pitch hearing loss. Salts also claims that his low IQ, coupled with emotional problems and a learning disability, adds to the severity of his disability.

In 1986, The Missouri Department of Vocational Rehabilitation referred Salts to Brian Cysewski, Ph.D., for a psychological evaluation. Salts's earnings record indicates that, at the time of the referral, he had not worked since 1982. Dr. Cysewski reported that Salts achieved a verbal score of 79, a performance score of 91, and a full-scale IQ of 82 on the Wechsler Adult Intelligence Scale—Revised (WAIS-R), placing Salts's verbal abilities in the borderline range and his nonverbal abilities in the low average range. Dr. Cysewski stated that Salts had also taken an I.Q. test in 1982; since then, his verbal score had dropped three points and his performance score had dropped eleven points. The Bender Gestalt, according to Dr. Cysewski, indicated "soft signs" of neurological impairment, and was "strongly indicative of significant emotional factors." Based on Salts's scores on the Wide Range Achievement Test, Dr. Cysewski categorized Salts's reading and spelling as below third-grade level and his arithmetic skills as 6B-grade level. Dr. Cysewski stated in his report that these scores indicate that Salts has a learning disability, "primarily in verbal areas." Dr. Cysewski further reported that the results of the Thematic Apperception Test show Salts to be "an extremely hostile and demanding individual" with "significant suicidal ideations."[2]

In March 1988, Salts found a job in a sawmill, where he worked until August 1988. He applied for SSI on October 18, 1988, and for disability benefits on November 10, 1988. His applications were denied initially and upon reconsideration, and he requested and received a hearing before an administrative law judge (ALJ). Salts appeared at the hearing unrepresented by counsel. The ALJ found that Salts "has residuals of poliomyelitis, but that he does not have an impairment or combination of impairments listed in, or medically equivalent to one listed in" 20 C.F.R. § 404, Subpart P, Appendix 1.[3] The ALJ discredited Salts's complaints of pain resulting from

---

1. While Salts has held a variety of jobs, his earnings have been minimal. Since 1970, his reported income has been as follows:

| 1970 | 151.25 | 1975 | 0.00 | 1980 | 2,068.81 |
| 1971 | 183.40 | 1976 | 2,316.81 | 1981 | 1,873.89 |
| 1972 | 170.38 | 1977 | 1,711.64 | 1982 | 1,338.31 |
| 1973 | 779.08 | 1978 | 1,605.22 | 1988 | 2,301.47 |
| 1974 | 1,087.80 | 1979 | 1,043.12 | | |

There is no evidence in the record of what, if anything, Salts earned between 1983 and 1987. Although these earnings, on an annual basis, do not amount to substantial gainful activity under 20 C.F.R. § 404.1574(a)(2), they do qualify Salts for disability insured status under 20 C.F.R. § 404.101 *et seq.*

2. Dr. Cysewski's only remark about Salts's vocational outlook was that, while he "appears to have the intellectual ability to pursue his chosen profession as a truck driver, ... Mr. Salts may not have the tolerance, patience, or self-esteem to be able to participate in a training program at the present time."

3. 20 C.F.R. § 404, Subpart P, Appendix 1 lists those exertional and nonexertional impairments severe enough to trigger a finding of disability by the Secretary.

his childhood polio based on Salts's statements that he did not take any prescription pain medication or seek treatment for the pain, and that he takes care of his garden, plays cards, drives a car, mows his lawn, and puts toy cars together. The ALJ found Salts's statement that polio limited his ability to walk and stand inconsistent with the fact that Salts "was able to walk and stand throughout his work as a heavy sawmill laborer." The ALJ did not further develop the record to determine whether Salts had, in fact, left his job at the sawmill because, among other things, his leg was bothering him and his doctor told him not to work there anymore.

The ALJ dismissed Salts's other complaints of physical impairments as well. He dismissed Salts's "nerve problem," finding that Salts takes no medication and underwent no medical treatment for that condition. The ALJ found no evidence of active ulcers, and Salts testified at the hearing that his ulcers were controlled by diet and medication. Salts further testified that medication kept his breathing problem under control. The ALJ discredited Salts's allegation of a wrist injury based on medical reports that showed Salts to have suffered a sprained left wrist; an x-ray of the wrist was negative, and there was no evidence of swelling or deformity. The ALJ did not specifically address Salts's allegations of hearing loss, which Salts testified at his hearing was "the reason a lot of jobs won't be hired—or hire me."

4. The ALJ rated the severity of Salts's mental disorder in accordance with 20 C.F.R. § 404, Subpart P, Appendix 1, Part A, § 12.05. His findings were as follows: Restrictions of activities of daily living—slight; difficulties in maintaining social functioning—slight; deficiencies of concentration, persistence or pace resulting in *failure to complete tasks in a timely manner* (in work settings or elsewhere)—seldom; episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors)—never.

5. Although the record is unclear on this point, it appears that Salts last worked as a security guard from November 1977 until November 1979.

The ALJ acknowledged Dr. Cysewski's 1986 report regarding Salts's intellectual abilities and psychological condition. The ALJ determined, however, that "[t]here is no evidence of impairment in cognitive functioning" and that Salts "has no restrictions of an emotional basis or by IQ testing from performing his past relevant work." [4]

The ALJ concluded that Salts was able to perform work not requiring lifting in excess of twenty pounds and that, therefore, Salts's impairment did not prevent him from performing his past work as a security guard.[5] Consequently, the ALJ denied Salts's request for SSI and disability benefits. Salts then retained counsel and appealed the ALJ's decision to the Appeals Council. The Appeals Council denied Salts's request for review, making the ALJ's determination the final decision of the Secretary.

Salts sought judicial review of the Secretary's decision in the district court. The case was assigned to a magistrate, who found that substantial evidence on the record as a whole supported the Secretary's decision. The district court accepted without comment the magistrate's recommendation to uphold the Secretary's decision. On appeal, Salts asks that the matter be remanded to the Secretary to determine whether the combined effects of Salts's impairments require that he be found disabled.[6]

6. Salts argues that the ALJ's ruling conflicts with the Fourth Circuit's decision in *Reichenbach v. Heckler*, 808 F.2d 309 (4th Cir.1985), which cited Social Security Rulings 83–16 and 82–55 in holding that an ALJ must consider the combined effects of a claimant's mental and physical impairments. Salts's continuing reliance on *Reichenbach* and the two Rulings is unnecessary. The Fourth Circuit relied on the two Rulings only because 42 U.S.C. § 423(d)(2)(B) was not yet in effect when the Secretary made her final decision in that case. *Reichenbach*, 808 F.2d at 312. Social Security Ruling 83–16 has since been superseded by Ruling 85–16. Ruling 82–55 has been rescinded. 42 U.S.C. § 423(d)(2)(B), which applies in the instant case, provides that, to determine whether a claimant's impairments are of sufficient severity:

the Secretary shall consider the combined effect of all of the individual's impairments

## Discussion

■ Our task on review is to determine whether substantial evidence on the record as a whole supports the Secretary's decision to deny benefits to Salts. *See* 42 U.S.C. § 405(g); *Groeper v. Sullivan*, 932 F.2d 1234, 1237 (8th Cir.1991). To make this determination, we must review the entire administrative record, taking into account "whatever in the record fairly detracts from" the Secretary's findings. *Cockerham v. Sullivan*, 895 F.2d 492, 495 (8th Cir.1990) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

■ The substantial weight of the evidence supports the ALJ's findings that Salts's ulcers and wrist injury do not amount to significant impairments. Salts's medical records show that the injury to his left wrist was simply a sprain. He testified at his hearing that medicine and diet were helpful in controlling his ulcers, and there is no evidence to suggest that the ulcers would interfere with his work activities.

■ In addition, although the ALJ did not mention Salts's alleged hearing loss and breathing problem in his opinion, the substantial weight of the evidence supports the conclusion that these problems are not severe. Salts stated at his hearing that his breathing problem is controlled by medication, and presented no objective evidence of his hearing loss. The ALJ noted during the hearing that Salts had no trouble hearing at that time.

■ Overall, however, the record is insufficient in its present state to support the ALJ's decision that Salts could perform his past relevant work as a security guard. The Secretary has promulgated specific guidelines that the ALJ must follow when evaluating whether a claimant can return to his past work. *E.g.,* Social Security Ruling 82–62, Soc.Sec.Rep. 809 (West 1983); *see Groeper v. Sullivan*, 932 F.2d 1234,

without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impair-

1238 (8th Cir.1991). The ALJ must obtain detailed information regarding the mental and physical demands of the past work and,

for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

Soc.Sec.Rep., *supra,* at 811–12.

This court has held that the ALJ must specifically set forth the claimant's physical and mental limitations, along with the physical and mental requirements of the claimant's past relevant work. Only then can the ALJ adequately "compare the claimant's residual functional capacity with the demands of the past work to determine whether the claimant is capable of performing the relevant tasks." *Groeper*, 932 F.2d at 1239; *Kirby v. Sullivan*, 923 F.2d 1323, 1326–27 (8th Cir.1991). "An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements." *Groeper*, 932 F.2d at 1238.

■ In addition to the requirement that the ALJ make explicit findings regarding the claimant's ability to return to past work, the ALJ also has a duty to fully and fairly develop the facts in the record. *Highfill v. Bowen*, 832 F.2d 112, 115 (8th Cir.1987). This duty is even greater where, as here, the claimant is not represented by counsel at his hearing. *Id.* "Unfairness or prejudice resulting from an incomplete record—whether because of lack of counsel or lack of diligence on the ALJ's part—requires a remand." *Id.*

Neither the ALJ's findings in this case nor the record are adequate to support his conclusion. Salts alleges some serious mental problems, including a verbal IQ of 79. While Salts's IQ is not low enough to

ments, the combined impact of the impairments shall be considered throughout the disability determination process.

create a presumption that he is disabled, 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.-05, it is potentially a severe impairment. *Cockerham v. Sullivan*, 895 F.2d 492, 495–96 (8th Cir.1990). A claimant with a valid verbal, performance or full scale IQ of 70–79 may be considered disabled after consideration of vocational factors. *Id.* Furthermore, psychological testing portrays Salts as a "hostile and demanding" individual with significant suicidal ideations; this may be related to the "nerve problems" of which Salts complains. Other tests showed Salts to have a learning disability primarily in verbal areas.

Despite this uncontroverted evidence of Salts's mental deficits, the ALJ made no explicit findings regarding the mental demands that would be placed on Salts as a security guard. Nor did the ALJ develop the record regarding Salts's mental condition in 1979, when Salts last worked as a security guard. "A conclusory determination that the claimant can perform past work," without such findings, "does not constitute substantial evidence that the claimant is able to return to his past work." *Groeper*, 932 F.2d at 1239. The only evidence in the record about Salts's past mental condition is Dr. Cysewski's statement that Salts's IQ had dropped several points since he was tested in 1982; this adds support to Salts's contention that even though he may have been able to work as a security guard in 1979, he may not be able to do so now.

Nor are the facts regarding Salts's work history adequately developed. In discussing Salts's credibility, the ALJ noted that during the years when Salts was working, he never earned more than $2,316.81 in one year. The ALJ made no effort, however, to determine why Salts's earnings were so low.[7] Absent further analysis, this observation does not constitute substantial evidence in support of the ALJ's determination that Salts's complaints lacked credibility. *See Miller v. Sullivan*, 953 F.2d 417,

421 (8th Cir.1992); *Cline v. Sullivan*, 939 F.2d 560, 567 (8th Cir.1991).

The ALJ also failed to clear up several inconsistencies in Salts's work record. For example, while Salts claims to have worked as a security guard from November 1977 until November 1979 for $3.35 per hour, the record shows that he earned only $1,605.22 in 1978 and $1,043.12 in 1979. Thus, he worked less than 500 hours in 1978, and just over 300 hours in 1979. Similarly, the ALJ makes much of the fact that Salts worked at a sawmill from March 1988 until August 1988. During that period, the record shows that Salts's salary was $4.35 per hour, yet he earned a total of only $2,301.47. Over a six-month period, therefore, Salts worked only 529 hours, an average of less than twenty-one hours per week. In order to draw any conclusions from Salts's work record, the ALJ first must fully develop the facts of Salts's employment.

Finally, the ALJ improperly discredited Salts's complaints of pain and weakness in his right leg resulting from his childhood polio. When determining the credibility of a claimant's allegations of subjective pain, *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984), requires the ALJ to examine (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski*, 739 F.2d at 1322. The ALJ may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Id.; Ludden v. Bowen*, 888 F.2d 1246, 1248 (8th Cir.1989).

Salts testified at his hearing that as a security guard, he was on his feet seven and one-half hours per day. At the time of the hearing, however, he stated that he was able to stand on his feet for only an hour and could walk for only one-half mile. He further stated that after walking about

---

7. Salts's history of low earnings could be interpreted as evidence that he was never able to perform substantial gainful activity over a period of time, or as evidence that he simply never

wanted to work. The ALJ did not develop the record to a point where one can say that either of these possibilities is more likely than the other.

100 feet, his leg "throbs and draws up on him." There is no objective medical evidence in the record that contradicts Salts's testimony.

The ALJ found, however, that Salts's activities, such as taking care of his garden and mowing his lawn, putting model cars together, playing cards and driving, were inconsistent with Salts's allegation of disability. Yet the fact that a claimant engages in such activities does not indicate that he is able to return to work. *See Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989). None of the activities to which the ALJ referred is evidence of Salts's "ability to perform the requisite physical tasks of employment on a daily basis." *Cline*, 939 F.2d at 565; *Thomas*, 876 F.2d at 669.

The ALJ also suggested that Salts's ability to walk and stand while he was working as a laborer in a sawmill is inconsistent with his claim of pain and weakness in his leg. Salts last worked as a sawmill laborer, however, for less than six months, and he stated that he left that job in part because of his difficulty standing and walking and because his doctor told him not to work there anymore. The ALJ, therefore, did not properly support his determination that Salts's allegations of difficulty walking and standing were not credible. Those allegations, if true, would certainly prevent Salts from returning to his past work as a security guard.[8]

We therefore find that substantial evidence on the record as a whole does not support the Secretary's decision that Salts could return to his past work as a security guard. On remand, the ALJ must develop the record more fully, especially on the issues of (1) the mental demands of Salts's past work; (2) Salts's mental condition in 1979, compared to his current mental condition; (3) Salts's "nerve problem;" and (4) Salts's work history, including why his lifetime earnings are so meager, why his apparent salary and length of employment as a security guard and as a sawyer are inconsistent with his annual income for the years that he held those positions, and why he left his jobs as a security guard and a sawyer. The ALJ must then determine, in light of the fully developed record, whether the combined effect of all of Salts's impairments permits him to return to his past work as a security guard. If the ALJ concludes that Salts cannot return to his past work, the burden of proof would shift to the Secretary to show the existence of other jobs in the national economy that Salts is capable of performing. *See Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). Because Salts suffers from both exertional and nonexertional impairments, the Secretary would not be able to fulfill this burden by reference to the Medical–Vocational Guidelines. *See Webber v. Secretary, Health & Human Services*, 784 F.2d 293, 297 (8th Cir.1986). The ALJ would have to use vocational expert testimony to determine what jobs, if any, Salts can perform.[9] *See Spencer*, 798 F.2d at 278 n. 2 (borderline intelligence a severe nonexertional impairment to be considered by a vocational expert).

We reverse the judgment of the district court and remand the case with instructions to remand it to the Secretary for further proceedings in accordance with this opinion.

---

**8.** The ALJ also found that Salts's acceptance of unemployment benefits discredits his claim of disability. We agree that it is facially inconsistent for Salts to accept unemployment compensation while applying for social security benefits. We have held, however, that the fact that someone in a position similar to Salts's seeks disability benefits while receiving unemployment compensation does not support a finding of lack of credibility. *See Spencer v. Bowen*, 798 F.2d 275, 278 (8th Cir.1986).

**9.** Dr. Cysewski's report from December 5, 1986 is now over five years old. The ALJ should obtain new expert testimony in order to assess Salts's current impairments.