Nancy E. CLARKE, Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Appellee.

No. 87–1599.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 17, 1987.

Decided March 30, 1988.

Robert Pratt, Des Moines, Iowa, for appellant.

Richard L. Richards, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before ARNOLD and FAGG, Circuit Judges, and LARSON,* Senior District Judge.

FAGG, Circuit Judge.

The Secretary of Health and Human Services denied Nancy E. Clarke's claim for supplemental security income benefits under the Social Security Act, 42 U.S.C. §§ 1381, 1381a. On review of the Secretary's final decision, the district court affirmed. Clarke now appeals to this court and we also affirm.

Clarke is forty-four years old. She has completed the eleventh grade and functions in the low-normal range of intelligence. Clarke is obese, smokes cigarettes, and complains of various health problems, including difficulty with her balance and pain in the bottoms of both feet. In addition, Clarke maintains a hostile attitude that is unrelated to her claimed impairments. Despite these apparent long-standing problems, Clarke has worked on the cleaning staff of a motel and as a laborer in a greenhouse. In 1974 Clarke quit her greenhouse job for reasons unrelated to her current claim for benefits. She has been unemployed since that time.

The Secretary initially denied Clarke's claim for benefits. Clarke then sought judicial review, and the district court remanded the case to the Secretary with instructions to conduct a supplemental hearing. After that hearing an administrative law judge (ALJ) entered a recommended decision. He found Clarke's claim that she was physically unable to work inconsistent with the record. Nevertheless, the ALJ found Clarke incapable of returning to her past relevant work because of her problem with her feet. Clarke's previous jobs constituted medium work, and the ALJ determined that Clarke was now capable of only sedentary work. After considering the testimony of a vocational expert about the availability of jobs at this level, the ALJ found Clarke disabled and thus entitled to benefits. In doing so, however, the ALJ

noted that Clarke's "overriding problem appears to be [her] hostile and belligerent attitude."

The Appeals Council, acting on behalf of the Secretary, rendered a final agency decision in which the Council declined to adopt the ALJ's disability determination. The Council did not challenge the ALJ's credibility findings, but instead concluded that based on its analysis of the record Clarke was able to perform her past relevant work. Thus, Clarke failed to carry her burden of proof, *see Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir.1986) (per curiam), and she was not entitled to benefits. The district court affirmed.

On review of the Secretary's denial of benefits, we must determine whether that decision is supported by substantial evidence on the record as a whole. *Steurer v. Bowen,* 815 F.2d 1249, 1250 (8th Cir.1987); *see* 42 U.S.C. § 405(g). Because the Secretary acted here through the Appeals Council, we must defer to the Council's decision, rather than the ALJ's decision, "if substantial evidence exists to support it, whatever the result might have been if [we] were reviewing the ALJ's decision directly." *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984).

■ In assessing the substantiality of the evidence, we must consider evidence that detracts from the Council's decision as well as evidence that supports it. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951). Here, the dissent's approach is one-sided, that is, the dissent views the evidence only in the light most favorable to the claimant. Under the substantial evidence standard, however, we must view the entire record as a whole. *See Steurer,* 815 F.2d at 1250. Additionally, the substantial evidence standard "presupposes * * * a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substan-

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of

Minnesota, sitting by designation.

tial evidence would have supported an opposite decision." *Baker*, 730 F.2d at 1150.

Here, the record contains, and the dissent fails to acknowledge, substantial evidence to support the Council's decision. Despite her claimed limitations, Clarke's daily activities are basically unrestricted. They include vacuuming, yard work, laundry, reading, watching television, and assisting Clarke's mother with cleaning and cooking. Further, Clarke testified her foot problems existed before she began working at the greenhouse. Yet, Clarke did not seek any significant medical care for her feet until 1982. Medical notes made by Clarke's podiatrist toward the end of her treatment reflect that "she was no longer having any complaints with respect to her feet." Clarke's complaints were resolved to a large extent by inserts in her shoes. In fact, Clarke testified that with inserts in her shoes she can stand for approximately four hours without difficulty.

In reaching its decision, the Council can weigh the evidence independently and make its own findings and conclusions. *Oldham v. Secretary of Health & Human Serv.*, 718 F.2d 507, 510 (1st Cir.1983). Nevertheless, the Council's decision must be subject to especially careful scrutiny if the Council rejects an ALJ's credibility findings. *Day v. Heckler*, 781 F.2d 663, 665 (8th Cir.1986). That standard is inapplicable here, however, because the Council did not question the ALJ's assessment of Clarke's credibility. Rather, the Council accepted the ALJ's determination that Clarke's testimony was "generally credible" with regard to her "essentially unrestricted activities of daily living." The Council also agreed with the ALJ when he found Clarke's assertions that she was physically unable to work inconsistent with the record.

The Council did disagree with the ALJ's finding that Clarke's foot problems prevented her from performing her past relevant work. That finding, however, was not based on a credibility determination, but instead on a review of the underlying evidence. Thus, the Council viewed the record and interpreted the evidence differ-

ently. The Council was free to do so, *see Razey v. Heckler*, 785 F.2d 1426, 1431, *amended*, 794 F.2d 1348 (9th Cir.1986); *Oldham*, 718 F.2d at 510 n. 2, without triggering the especially careful scrutiny standard. In addition, the ALJ appeared to acknowlege there was room for disagreement when he stated that he had "given [Clarke] the benefit of absolutely every doubt whatsoever" and "that in all reality [Clarke's] physical capabilities most likely far exceed work at [the sedentary] level of endeavor."

Finally, counsel for Clarke on appeal, who was not counsel in the proceedings below, urges this court to consider an issue not raised before the district court. Clarke now contends the Appeals Council, in denying benefits, exceeded the scope of the district court's prior remand order. We must reject counsel's efforts to raise an issue for the first time on appeal as a basis for reversal. *See Medtronic, Inc. v. Gibbons*, 684 F.2d 565, 569 (8th Cir.1982); *see also Waite v. Bowen*, 819 F.2d 1356, 1360 n. 1 (7th Cir.1987).

As the dissent correctly observes, the district court remanded Clarke's case to the Secretary "for further hearing and vocational expert testimony." The decisions of the ALJ and Council that we have already discussed arose out of the remand proceedings. Significantly, when Clarke petitioned the district court to reopen her case, her request for judicial review was limited to the merits of the Council's decision. Thus, on her return to the district court, Clarke knew the Council had decided she could perform her former work. Yet, Clarke failed to challenge the scope of the supplemental proceedings even though she knew the basis for the Council's denial of benefits. Under these circumstances, we simply cannot agree with the dissent that the cards have been unfairly "reshuffled" against Clarke. The same district judge who entered the remand order also reviewed the supplemental proceedings and affirmed the Council's decision. In doing so, the judge noted the Council "was not required to consider the vocational expert testimony" because the Council had found

Clarke could perform her past relevant work. Although the Council's decision was clear to all involved, adherence to the remand order was never questioned in the district court.

Based on a thorough review of the record, we conclude the Secretary's decision denying benefits to Clarke is supported by substantial evidence on the record as a whole. Accordingly, we affirm the district court's order upholding the Secretary's decision.

LARSON, Senior District Judge, dissenting.

I respectfully dissent. I cannot agree to affirm the Appeals Council's decision that this claimant can perform her past work under the circumstances of this case.

In holding the claimant could return to her past work in a greenhouse, the only full time job she has ever held,[1] the Appeals Council rejected the opinions of two administrative law judges that the claimant's exertional capacity is limited to sedentary work, discounted the claimant's substantial nonexertional impairments based solely on its evaluation of the objective medical evidence, and, in my view, exceeded the scope of the district court's initial order remanding for the purpose of obtaining vocational expert testimony to consider properly these nonexertional impairments.

Appellant Nancy Clarke is, as the majority notes, an obese forty-four year old woman.[2] In fact, as the Secretary concedes, her weight equals that contained in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 § 10.10. While she does not possess any of the other physical characteristics required for her condition to meet the Listing, the spinal meningitis she suffered from as a child left her, according to physicians, psychologists, and psychiatrists retained by the Secretary himself, with pes cavus deformity in both feet, balance problems, poor fine motor coordination, a verbal IQ of 76, performance IQ of 81, and full scale IQ of 81,[3] very limited judgment and immediate recall, problems in concentration, difficulty with non-verbal reasoning and planning ability, very poor math skills, and a hostile and blunt demeanor.

The claimant missed a fair amount of school as a young child and took ten years to complete eight grades. In high school, she was passed from grade to grade until the eleventh grade, when school officials simply advised her to quit. Attempts at vocational rehabilitation failed as a result of her limited intellectual abilities. She is able to care for herself and perform routine household tasks, but must be allowed to perform them at her own pace. Except for brief periods in the 1960's for vocational schooling and in the 1970's when she lived with her sister, Clarke has lived with and been supported by her now seventy-nine year old mother and her step-father.

Clarke filed the instant claim for Supplemental Security Income benefits on December 31, 1981. The Secretary's initial and

---

1. Clarke worked full time at a greenhouse in Chicago from some time in 1972 through early 1974, potting and planting plants for $1.80—$1.90 per hour. During this time, she lived with her sister, who drove her to and from work. When she was no longer able to live with her sister because of her sister's divorce, she returned home to live with her mother in 1974. Her mother testified that because of the claimant's inability to make floral arrangements, the local greenhouse/floral shops would not hire her, and the claimant has not worked since 1974.

Prior to obtaining her greenhouse job, Clarke worked briefly on a part-time "as needed" basis cleaning rooms at a motel. Her mother testified the motel was a "little one horse place" where the claimant could work at her own pace.

2. In 1982, her weight was 259 pounds at a height of 61¼ inches.

3. The claimant's Wechsler Adult Intelligence Scale scores have declined steadily since her past work in 1974. In 1976 her scores were: verbal 86, performance 95, full scale 89. By 1982 they had declined to: verbal 81, performance 84, full scale 82. Her most recent scores in 1984 were: verbal 76, performance 88, full scale 81. Where more than one IQ is customarily derived, the lowest of the IQ's should be used in applying the Social Security regulations. *Webber v. Secretary of Health & Human Services*, 784 F.2d 293, 298 n. 6 (8th Cir.1986). Clarke's verbal score of 76 should thus be the reference point for purposes of determining her residual functional capacity.

reconsideration decisions found her capable of light work and denied her benefits. After a hearing at which both the claimant and her mother testified, the administrative law judge found Clarke exertionally limited to sedentary work because of her inability to stand or walk for long periods of time due to the pes cavus deformity in her feet and her balance problems. Despite the existence of nonexertional impairments, the ALJ then applied the Medical–Vocational Guidelines and concluded there was work in the national economy which the claimant could perform. This decision was accepted by the Appeals Council and became the final decision of the Secretary.

On appeal, the district court reversed, implicitly affirming the Secretary's sedentary exertional determination, but finding improper consideration of the claimant's nonexertional impairments. The court reiterated well-settled Eighth Circuit law that when nonexertional impairments are present, the Secretary may not rely upon the Medical–Vocational Guidelines, but must instead call a vocational expert. *See, e.g., Webber v. Secretary, Health & Human Services,* 784 F.2d 293, 297 (8th Cir. 1986), *citing Tucker v. Heckler,* 776 F.2d 793, 795 (8th Cir.1985); *McCoy v. Schweiker,* 683 F.2d 1138, 1146 (8th Cir.1982).[4] The court ordered the case remanded to the Secretary for the sole purpose of calling an expert witness to testify. On remand, the Appeals Council ordered a second administrative law judge to conduct "further pro-

ceedings consistent with the Order of the Court."

At these proceedings, the second ALJ accepted the determination that the claimant was exertionally limited to sedentary work, and an expert vocational witness was called to testify concerning the effect of the claimant's nonexertional impairments. The vocational expert testified there were no jobs in the economy which the claimant could perform in view of her nonexertional impairments, particularly her low IQ and poor fine motor skills. The ALJ adopted this conclusion and found the claimant disabled and eligible for supplemental security income benefits.[5]

Without any notice to the claimant that her exertional level was being re-examined, the Appeals Council rejected the ALJ's findings that the claimant's foot problems prevented her from performing jobs requiring prolonged standing or walking. The majority characterizes this rejection as simply "view[ing] the record and interpret[ing] it differently," but, as the Secretary effectively concedes, the Appeals Council's decision necessarily overturned the ALJ's evaluation of the testimony of the claimant and her mother concerning the extent of the claimant's physical limitations. The Appeals Council also rejected the ALJ's evaluation of the claimant's nonexertional impairments, concluding she could perform any type of low-level routine work, despite the Secretary's own consulting psychologist's opinions to the contrary both in 1982 and in 1984.[6] In my view, the Appeals

---

**4.** The district court's order stated:

The evidence of plaintiff's pain, loss of balance and low intelligence show that her characteristics do not identically match the rule relied upon by the administrative law judge. A vocational expert should have been called to testify as to whether there are jobs at which this particular claimant can be substantially and gainfully employed.

**5.** The administrative law judge denied the claimant's applications for child's benefits and for disability benefits, finding that she was not disabled on either July 15, 1965, or on June 30, 1974, the dates she last met the eligibility requirements for those programs. He found her nonexertional impairments rendered her disabled as of December 31, 1981, however, the date she filed for supplemental security income benefits.

Although the ALJ emphasizes the claimant's increasingly hostile demeanor in his decision, the record contains other evidence of the claimant's post–1974 problems. In addition to declining IQ scores, Clarke experienced numerous physical difficulties, including a knee injury in 1978 when she lost her balance going up the stairs, extreme balance difficulties and Bell's palsy resulting in hospitalization in 1984, borderline hypertension, and shortness of breath upon any significant exertion such as climbing the stairs. She also continued to experience difficulties with her feet, and sought additional medical treatment for them in 1982–84.

**6.** Dr. Sampel stated in 1982 that the claimant could perform only routine repetitive tasks that did not require a great deal of fine motor coordination. In 1984, he noted again her difficulty with speed of mental operation and fine motor

Council's decision that claimant can perform her past work does not withstand the "especially careful scrutiny" which I believe is required in this case. *Webber*, 784 F.2d at 296–97.

Moreover, the Appeals Council's decision clearly went beyond the district court's initial remand order and the ALJ's express statement to the claimant concerning the purposes of the second hearing. The majority declines to reach the question of whether the "law of the case" doctrine mandates an award of benefits here, because it was not raised before the district court. The law of the case doctrine prevents the relitigation of settled issues in a case, thus protecting the settled expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency. *Little Earth of the United Tribes, Inc. v. HUD*, 807 F.2d 1433, 1441 (8th Cir.1986). The Secretary has acknowledged in prior cases that he is bound on remand to follow the law of the case doctrine, *Hillhouse v. Harris*, 547 F.Supp. 88, 92 (W.D.Ark.1982), *aff'd*, 715 F.2d 428 (8th Cir.1983), and counsel for the Secretary candidly admitted at oral argument in this case that the doctrine "has a bearing on this matter."

The expectation of the claimant and her attorney, based upon the express statement of the second ALJ, was that her exertional capacity was no longer an issue in her case. The presentation of evidence by the claimant could well have been affected by this expectation. Yet, the Appeals Council used almost exclusively evidence from the 1984 hearing to overturn the ALJ's sedentary exertional ruling.

This Court does not ordinarily consider questions not properly raised below, but has the discretion to do so where, for example, resolution of the question is "beyond any doubt ... or where 'injustice might otherwise result.'" *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976) (citations omitted). *See Struempler v. Bowen*, 822 F.2d 40, 42 (8th Cir.1987); *Parker v. Corrothers*, 750 F.2d 653, 658 (8th Cir.1984); *Wright v.*

*Newman*, 735 F.2d 1073, 1076 (8th Cir. 1984). I would reach the law of the case issue because I believe it is fundamentally unjust for the Secretary to "reshuffle the cards"—particularly without notice—once Clarke was "dealt a winning hand." *Skelton v. Bowen*, 668 F.Supp. 629, 631 (N.D. Ohio 1987); *Holst v. Bowen*, 637 F.Supp. 145, 146–47 (E.D.Wash.1986); *Davis v. Secretary, Health & Human Services*, 634 F.Supp. 174, 178 (E.D.Mich.1986). *See Little Earth of the United Tribes, Inc.*, 807 F.2d at 1441; *Hooper v. Heckler*, 752 F.2d 83, 87–88 (4th Cir.1985); *Carrillo v. Heckler*, 599 F.Supp. 1164, 1168–69 (S.D.N.Y. 1984).

While application of the law of the case doctrine could mandate an award of benefits in this case, at the very least I would reverse the Appeals Council's decision that the claimant can perform her past work and would remand the case to the Secretary for further proceedings without prejudice to the claimant's right to raise directly with the district court, should benefits again be denied, the question of whether the Secretary may properly revise his initial determination, implicitly affirmed on appeal to the district court the first time, that this claimant has the exertional capacity to perform only sedentary work.

coordination, and stated that she "would have real difficulty doing any routine repetitive task due to her poor math skills and her limited judgment. She would also have real difficulty doing any type of routine repetitive task due to her generally negative and hostile attitude and her questionable emotional stability at this time."