Terry A. ZENKER, Appellant,

v.

Otis BOWEN, Secretary of Health and Human Services, Appellee.

No. 88–5204.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 24, 1988.

Decided April 14, 1989.

Fintan L. Dooley, Bismarck, N.D., for appellant.

Cameron W. Hayden, Bismarck, N.D., and Lucille G. Meis, Denver, Colo., for appellee.

Before HEANEY,* BOWMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Terry A. Zenker appeals from the district court's order affirming the decision of the Secretary of Health and Human Services to deny his applications for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. The sole issue on appeal is whether there is substantial evidence in the record to support the finding of the Secretary that Zenker is not entitled to benefits under the Act. As we are convinced that substantial evidence does support this decision, we affirm.

---

* The HONORABLE GERALD W. HEANEY assumed senior status on December 31, 1988.

1. In 1982, Zenker tested as having a full scale IQ of 63, a verbal IQ of 65, and a performance IQ of 66. However, in August of 1985, a similar

## I. BACKGROUND

Zenker filed his application for disability and SSI benefits on September 16, 1986, alleging disability as of June 1, 1983, due to a learning impairment and a speech impediment. Zenker also suffers from chronic bronchitis, a seizure disorder, hypertension, alcoholism, and Klinefelter's syndrome. The record indicates that Zenker, now 48 years old, is only 5'2" tall and weighs approximately 113 pounds.

It appears that Zenker attended school until age 17 or 18, having had to repeat the third and fourth grades once, and the fifth grade twice. He testified that he did not complete the eighth grade but the record is unclear as to whether Zenker spent eight actual years in school or if he entered eighth grade and failed to finish out that school year. Nevertheless, it is conceded by the Secretary that Zenker functions within the borderline mental range of ability.[1]

Zenker testified at the administrative hearing that in the past he worked as a cook in several restaurants but was unable to continue this work due to alcoholism and physical limitations brought on by hernias. He first received alcohol dependency treatment at a North Dakota State Hospital in 1982. Although Zenker can now be categorized as a recovering alcoholic, he has had at least two alcohol-related hospitalizations since that time. When hospitalized in July 1983, Zenker weighed only 87 pounds and suffered from malnutrition and tuberculosis. He also underwent hernia operations in 1982, 1983 and 1985.

In November 1982, Zenker began vocational training at Pride Industries, a rehabilitation center for developmentally disabled adults. He remained in Pride's rehabilitation program until March 1984, at which time he was placed by Pride with the Bismarck Elks Lodge as a dishwasher. Still employed by the Lodge, Zenker works approximately twenty hours a week at

test revealed a full scale IQ of 73, a verbal IQ of 70, and a performance IQ of 80. Zenker attributed the earlier test results to inadequate eye glasses.

$3.35 an hour, washing pots and pans, scrubbing floors, wrapping baked potatoes, baking garlic bread and placing seafood on ice.

An ALJ held that Zenker's borderline mental functioning constitutes a severe impairment, but not severe enough to constitute an impairment listed in Appendix 1 to Subpart P, Part 404. He also found that Zenker's speech impediment and episodic alcoholism imposed no significant limitations on his work-related activities. The ALJ determined that Zenker was able to perform unskilled, simple, repetitive work at all exertional levels. Based on the fact that Zenker was able to work at the Elks Lodge for approximately twenty hours a week, the ALJ held that Zenker could work an eight-hour day, five days a week. Thus, although Zenker had not engaged in substantial gainful activity since 1983, the ALJ felt that Zenker's work activity at the Elks Lodge indicated that he could do so in the future.

## II. DISCUSSION

Zenker argues on appeal that substantial evidence does not exist to support the ALJ's finding that Zenker could function as a dishwasher on a full-time basis. We disagree.

If a claimant is not presently engaged in substantial gainful activity but is not precluded from doing so by physical or mental impairments, the Secretary will find no disability. 20 C.F.R. § 404.1571. To determine whether a claimant can engage in substantial gainful activity, the Secretary will examine the claimant's earnings, the nature of his or her work, how well the claimant performs, and the amount of time spent working. *Burkhalter v. Schweiker,* 711 F.2d 841, 844 (8th Cir.1983). Present levels of work activity may show that a claimant is able to do more work than he or she is actually doing. 20 C.F.R. § 404.1571.

The ALJ found, in the present case, that Zenker's ability to spend 20 hours a week at the Elks Lodge washing dishes and his satisfactory performance at this job indicated that Zenker could engage in substan-

tial gainful activity. Our role on appeal is to determine whether that decision is supported by substantial evidence on the record as a whole. *Clarke v. Bowen,* 843 F.2d 271, 272 (8th Cir.1988). The substantiality of evidence must take into account whatever in the record detracts from its weight. *Piercy v. Bowen,* 835 F.2d 190, 191 (8th Cir.1987).

The record establishes that Zenker works three days a week for approximately six and one-half hours each day. Thus, he works approximately twenty hours a week. Zenker receives the minimum wage of $3.35 an hour. In 1983, Zenker earned $1,7433.00; in 1984, he earned $3,799.00; and in 1985 he earned $2,037.00. In the first four months of 1987, Zenker had earned only $595.00. As the ALJ notes, Zenker's earnings have consistently averaged under $300.00 per month. *See* 20 C.F.R. § 404.1574(b)(2)(vi) (presumption that claimant has engaged in substantial gainful activity if earnings average more than $300 a month); and 20 C.F.R. § 404.1574(b)(3)(vi) (presumption that claimant has not engaged in substantial gainful activity if earnings averaged less than $190 a month). Thus, the ALJ correctly found that Zenker has not engaged in substantial gainful activity since 1983. The issue presented is whether Zenker's current level of work activity indicates he could tolerate working enough hours as a dishwasher to average more than $300 a month.

Bernice Garen, Zenker's supervisor at the Elks Lodge, reported that Zenker misses a lot of work due to illness, needs assistance with lifting 100–pound sacks of potatoes, and needs to be reminded not to smoke in the kitchen. Although she felt Zenker needs supervision, she felt he requires no more than any of the other Elks employees performing similar work. She noted that after a busy six-hour work shift, Zenker appears "very played out," and for that reason, she does not believe he could work full time at his job.

Zenker's wife testified that she also felt Zenker is unable to work full time at the Elks Lodge. She stated that after a busy

work shift Zenker's arms and legs are weak and his neck is very tense. He comes home with headaches and, on occasion, stomach cramps. She related that Zenker often returns home angry because his co-workers treat him like a child when his speech defect makes it difficult for them to understand him. According to Zenker's wife, the emotional stress and the physical exertion of the job would prevent Zenker from performing on a full-time basis.

Bryan Wetch, the Assistant Executive Director at Pride Industries, explained why Zenker was placed in a part-time position:

> Through training, Terry acquired the necessary skills to be a responsible hard worker. At the close of his training, Terry was placed part-time at the Bismarck Elks. His health being a primary reason for part-time placement versus full-time. Terry had excessive absences throughout his training—two hernia operations and other general poor health practices (poor nutrition, smoking, drinking) has resulted in limited stamina.

As a result, Wetch doubted if Zenker could perform full-time employment.

The medical evidence does not clearly support Wetch's observation that Zenker's stamina for full-time work is sufficiently limited to preclude full-time work. Zenker underwent three hernia operations. After each operation, he could do no lifting for up to two months. According to Dr. Steven K. Hamar, the surgeon who performed these operations, Zenker received a clean bill of health after July 1, 1985, and had no lifting restrictions at that time. Zenker testified, however, that his operations have made it difficult for him to lift the 100-pound sacks of potatoes at work. His supervisor corroborated this testimony. It is not clear from the evidence, however, that a 100–pound, without help, lifting requirement is imposed by Zenker's present job.

Zenker apparently has also had recurring bouts with alcohol abuse. In July 1983, Zenker was hospitalized at Jamestown State Hospital and underwent a month of therapy for his addiction. On admission, Zenker was malnourished, weighing only 87 pounds. Furthermore, he was tested and treated for tuberculosis. Zenker returned to Jamestown State Hospital in February 1984, after he resumed drinking. He was discharged two days later, as the hospital felt out-patient treatment was adequate.

At present, Zenker suffers from chronic bronchitis, a seizure disorder, hypertension and, probably, Klinefelter's syndrome. Dr. Arthur E. Van Vranken, Zenker's current treating physician, stated:

> Mr. Terry Zenker is a classical Klinefelter's syndrome with mild mental retardation, low set ears, slightly web neck, and hypogonadism, usually sterile, short small stature; all of these things would indicate a Klinefelter's syndrome and can only be proven by genetic studies, which could be done at the Mayo Clinic at much expense, however there is no question in my mind, but what he fits this picture.

Dr. Van Vranken concluded that all of Zenker's mental and physical problems led to his feeling socially inept and inadequate. This, in turn, created the danger of further drinking and seizures. He stated:

> Physically he is well enough to perform his job as a dish washer, but I doubt if his physical and emotional status would allow for a full time 40 hour per week position of any more than just mild responsibilities. And as you know such positions are unavailable for the most part except through programs such as Pride Industries.

In a letter dated August 25, 1987, Dr Van Vranken reiterated an opinion that Zenker "is able to work at light work on a part-time basis only, with minimal responsibilities * * *." The Appeals Council dismissed Dr. Van Vranken's second statement as contradictory to his earlier opinion. It is the ALJ's responsibility to evaluate the evidence adduced and to make credibility and substantive evaluations of conflicting information. Although we may not have arrived at the same conclusion, we are not in a position to find that the ALJ was wrong in this instance.

Zenker's wife, employer, rehabilitation counselor and treating physician are all of the opinion that Zenker cannot perform his

present job on a full-time basis. Evidence which supports the ALJ's finding to the contrary is Zenker's statement at the hearing that he would work more than 20 hours a week if that work were available at the Elks Lodge[3] and Dr. Van Vranken's first letter.

## III.  CONCLUSION

Because we feel the record does contain substantial evidence to support the ALJ's decision that Zenker can perform substantial gainful activity, we affirm.

HEANEY, Senior Circuit Judge, dissenting.

The administrative record in this case clearly establishes that Zenker cannot perform his present job as a dishwasher at the Elks Lodge on a full-time basis. As the majority concedes, Zenker's wife, employer, rehabilitation counselor and treating physician all testified to this fact. In light of this testimony, I cannot understand how the majority can deny Zenker the benefits to which he is entitled. For this reason, I respectfully dissent.

In the face of substantial contradicting evidence, the majority argues that Zenker must be denied benefits because he stated at the administrative hearing that he would work more than 20 hours at the Elks Lodge if that work were available. No credence should be given to such an isolated statement. First, Zenker outlined the physical and emotional difficulties he experiences with his minimal work load. He testified that he suffers from pain in the back of his neck and headaches from the pressures placed on him at work. Second, Zenker's wife and supervisor testified that Zenker misses a lot of work due to illness. They both concluded that Zenker could not perform his work on a full-time basis.

Third, Bryan Wetch of Pride Industries stated:

Terry's health concerns were compounded by his desire to tell people what they want to hear. When he's not feeling well, he will still go to work or go out with others when they ask, instead of taking care of himself. Eventually, this lead[s] to more serious illness which results in lost work.

Wetch did not believe Zenker has the stamina for a full-time position. This evidence appears credible in light of Zenker's intellectual limitations and his past inability to maintain a nutritionally balanced diet. Thus, Zenker's statement does not prove that his very real mental and physical limitations do not preclude him from tolerating a full-time job. Even if I felt Zenker understood his own limitations and truly believed he could work full-time as a dishwasher, I do not believe that statement alone outweighs all of the evidence to the contrary.

Furthermore, Zenker now holds a job in a somewhat "sheltered" environment. Zenker obtained his part-time job at the Elks Lodge through Pride Industries. From the record, it is clear that Zenker's employer is very understanding of his intellectual limitations and his physical impairments. Bernice Garen, Zenker's supervisor, suffers from a speech impediment similar to Zenker's. The record indicates that Zenker's last hernia operation and hospitalization for his alcoholism occurred while he was employed at the Elks Lodge. Zenker obviously performs his job as a dishwasher within a supportive environment.

The regulations draw a distinction between competitive and sheltered employment. 20 C.F.R. § 404.1574(b)(4) provides that if a claimant works in "a sheltered workshop or a comparable facility especially set up for severely impaired per-

3.  A consultative examination was conducted by Dr. R.L. Jennings on January 20, 1987. Dr. Jennings stated that Zenker was not disabled, but that he "is probably going to have a difficult time applying himself to any type of task that is going to require a great deal of physical activity because of his size; and his speech problem is going to make it impossible for him to partic-

ipate in any form of job where mentality is required and communications are required." Dr. Jennings does not indicate, however, if Zenker's speech impediment, mental retardation and physical limitations would preclude him from working more than three days a week at the Elks Lodge.

sons," and the claimant earns less than $300 a month, the Secretary will presume that he or she is not capable of substantial gainful activity. The ALJ found that Zenker's earnings have consistently been under the $300.00 amount. Because Zenker is presently working in a fairly sheltered environment and is earning less than $300.00 a month, I feel that such a presumption is warranted in this case. Furthermore, this Court has held that work in a sheltered workshop is not, in and of itself, substantial evidence supporting a denial of disability benefits. *Gavin v. Heckler*, 811 F.2d at 1198; *Iamarino v. Heckler*, 795 F.2d 59, 60 (8th Cir.1986).

Finally, Zenker did *not* state that he could perform 40 hours a week at a job outside of the non-competitive environment at the Elks Lodge. The exchange, so heavily relied upon by the majority, is comprised of the following:

Q: Now, this job you have at the Elks, would you be able to work a full day, eight-hour shift, if they would ask you to?

A: If they asked, but they won't ask because they're cutting down their hour, some of them hours.

\* \* \* \* \* \*

Q: But you feel you could then put longer hours if they'd have the work?

A: Right.

Tr. at 49–51.

At most, I interpret these answers to mean that Zenker believes he could work longer than six hours at a time if necessary. I see no mention of full-time work or a 40–hour work week. Thus, I believe the majority places too much weight on these statements.

The majority also points to the first letter of Dr. Van Vranken as evidence supporting a finding that Zenker can perform substantial gainful activity. I do not read Dr. Van Vranken's letter as an unequivocal statement that Zenker could work a 40–hour week. At most, he stated that Zenker could tolerate a 40–hour week in a non-competitive atmosphere, such as is provided by Pride Industries. Because of the ambiguity of the letter and his subsequent unequivocal statement that Zenker could only perform his job on a part-time basis, little weight should be given to Dr. Van Vranken's first letter.

There is some evidence to support the majority's view, but we cannot sustain the Secretary's decision unless it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Clarke v. Bowen*, 843 F.2d 271, 272 (8th Cir.1988); *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987); *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). As we clearly established in *Piercy* and *Gavin*, this review is "more than a rubber stamp of the Secretary's decision and is *more than a search for the existence of substantial evidence supporting the Secretary's decision.*" 835 F.2d at 191 (emphasis added). This standard requires us to scrutinize a record very closely to take into consideration the weight of the evidence in the record and to apply a balancing test to evidence which is contradictory. *Gavin*, 811 F.2d at 1199. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. *Id.*

Although the majority painstakingly recounts the evidence which contradicts the ALJ's decision, it proceeds to hold, in conclusory fashion, that sufficient evidence exists to support the determination that Zenker can perform substantial gainful activity. No attempt is made to evaluate the weight of this evidence, and no care is taken to balance out the contradictory evidence.

If I follow the procedure outlined in *Gavin*, I can only come to one conclusion—the evidence supporting the ALJ's decision to deny benefits is clearly outweighed by the contradictory evidence. The balance is in Zenker's favor.

Because I feel the evidence in this record clearly establishes that Zenker cannot perform substantial gainful activity, I would reverse the district court's order and remand the case with instructions to remand the case to the Secretary for a computation of disability benefits and Supplemental Security Income to begin as of June 1, 1983.