**Jerome G. WEIKERT, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

**No. 91–2460.**

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1992.

Decided Oct. 16, 1992.

Ralonda J. Mason and Ann C. Cofell, St. Cloud, Minn., for appellant.

Michael C. Messer, Chicago, Ill. (Thomas B. Heffelfinger, Robert M. Small, Donna Morros, Richard A. Urbin and Edward Studzinski, appear on the brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Jerome Weikert appeals the district court's[1] judgment affirming the denial of Weikert's application for Supplemental Security Income, 42 U.S.C. § 1381a (1988), for alleged mental disabilities. Weikert argues that the administrative law judge who heard his case erred in finding Weikert was not disabled, and that the ALJ displayed such hostility to Weikert during the hearing as to deny him his right to a fair hearing and require remand for a hearing before another ALJ. We affirm the judgment of the district court.

Weikert was born in Minnesota on January 20, 1949. After graduating from high school, he served in the Army from 1967 to 1970. When he left the Army he took a three year vacation because "I didn't think I could bear the hassle of working." He took a photography course, but quit after 1½ years "because his nerves couldn't handle it." In 1977 he took a course in orthotics, but quit in 1978, because of difficulties with an instructor. He had two jobs for an aluminum cookware company, one as a stockroom clerk and one as a salesman; he quit the former because he had "a very unreasonable boss," and the latter because there was "too much tension in that and not enough profit." He went to a Bible college in Dallas, where he took an associate degree in practical theology in 1980. While in Dallas, he held two jobs as a security guard. He held the first from October 1980 to January 1981, but was laid off when the construction project he was guarding was completed. He held the second from January to July 1981, but quit because he "got fed up with having to guard a different post every night." He came back to Minnesota and did some work basically on a volunteer basis as a "spiritual counselor" from June 1980 to April 1983.

Weikert ran a child care business from 1983 to 1985, stating that he usually worked a 6½ hour day, and sometimes worked nine hours, but quit because he was "burn[ed] out." Since that time he has done a six week stint of orthotics training, but quit because of "weakness and tiredness," "[s]evere pain in the left shoulder ... down the arms and fingers," and a cough due to inhaling adhesives on the job.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

Weikert applied for Supplemental Security Income on September 1, 1987, claiming that he had been disabled since April 15, 1985, due to a "nervous condition, emotional problems, [and a] back condition." Weikert's claim was initially denied, and he had a hearing before an ALJ.

Weikert testified at the hearing to a number of physical impairments. He testified that he had suffered from a spastic colon, but that the problem is now "under control" thanks to a side effect of a drug he is taking for a mental disorder. He complained of chronic back pain and difficulty sleeping. He also claimed to suffer from chronic fatigue. Medical evaluations indicate that Weikert is physically healthy, and Weikert's counsel does not dispute this fact.

Weikert's chief complaint about his mental condition was that he suffers panic attacks about once every forty-eight hours. He said that medication helps with the panic but "does not cure it." He also said he suffered from depression.

Dr. Handrich, his primary treating psychiatrist from October 1987 through November 1988, diagnosed him as having "panic disorder and major depressive disorder," and prescribed a drug to control the panic attacks. Handrich noted that Weikert "can abort panic if he takes time to talk self out of them." Another psychiatrist, Anthony Troiano, performed a consultative examination of Weikert in November 1987, and diagnosed Weikert as having "mixed personality disorder." A psychologist, Dr. Tuorila, also performed a consultative examination including personality tests, which led him to conclude that Weikert was "overly concerned about numerous vague physical complaints that are likely to be related to underlying psychological problems." Dr. Tuorila diagnosed Weikert as having somatization disorder.

An ALJ is required to apply a sequential analysis to evaluate mental impairments. 20 C.F.R. § 416.920a(c) (1991). First, the ALJ must determine if the impairment is severe. Section 920a(c)(1). If it is severe, he must then determine if it meets or equals a listed mental disorder, *see* 20 C.F.R. 404, Subpt. P, App. 1, § 12.00 (1991), by applying diagnostic and severity criteria. Section 416.920a(c)(2). In the case of multiple impairments, the ALJ must "consider the combined effect of all ... impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923 (1991). If the impairment is severe, but neither meets nor equals the listings, the ALJ must determine whether the claimant has sufficient "residual functional capacity" to do his prior work. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. § 416.960(b) (1991). If so, he will be considered "not disabled." 20 C.F.R. § 416.960(b).

The ALJ in this case prefaced his findings with the general conclusion that Weikert had exaggerated his symptoms in his testimony, based on evidence from the record that Weikert engaged in a number of activities that would not be possible were his symptoms as severe as he reported them to be. ALJ Decision, slip op. at 3. The ALJ found that Weikert was not physically impaired, but that his mental impairments were severe. ALJ Decision, slip op. at 2. Weikert's panic attacks did meet the diagnostic criteria for the mental impairment of "anxiety related disorder," 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.06(A). ALJ Decision, slip op. at 3. However, the ALJ found that the panic disorder did not disable Weikert under the severity criteria set out in section 12.06 paragraph B, relating to ability to perform daily activities; social functioning; concentration, persistence and pace; and deterioration or decompensation in work settings. ALJ Decision, slip op. at 4–5.

The ALJ also found that while Weikert "has some symptoms of a somatoform disorder, he does not meet the diagnostic criteria [of 12.07(A)] for such a disorder." *Id.* The ALJ reasoned that Weikert did not meet the somatoform disorder listing, section 12.07(A)(1), because "[i]t is unknown whether the symptoms began before age 30, as required by Section 12.07(A)(1)". *Id.*

Next, the ALJ considered the effect of all Weikert's impairments taken together to ascertain whether the cumulative effect

was medically equivalent to a listed impairment; he found it was not. Slip op. at 15. The ALJ then assessed Weikert's residual capacity to do his past relevant work. The ALJ stated that Weikert "does have an intolerance to stress," but that there was "no other significant limitation of claimant's ability to perform the basic physical or mental demands of work activity," *id.* at 5, and that he could perform his past relevant work as a security guard, *id.* at 6.

Weikert requested review of the ALJ's decision and submitted the report of a new treating psychologist, Dr. Baraga. Dr. Baraga stated that "Jerome has a long-standing pervasive history of somatic complaints beginning in early childhood through the present." She diagnosed him as having moderately severe panic disorder and severe undifferentiated somatoform disorder. The Appeals Council denied Weikert's request for review, and the ALJ's decision became the final action of the Secretary.

Weikert appealed to the district court, claiming that the ALJ erred in finding that he did not meet the listings and that the ALJ failed to develop the record by limiting Weikert's testimony as to his perceived physical limitations. The magistrate judge recommended that there was substantial evidence in the record to support the conclusion that Weikert did not meet or equal the listings and that the ALJ had adequately developed the record. Report and Recommendation of November 30, 1990. The district court adopted the magistrate judge's recommendation. Order of March 21, 1991, slip op. at 1–2.

## I.

On appeal Weikert argues that the evidence establishes that he suffers from somatoform disorder and that it is disabling. Of course, the ALJ conceded that Weikert did have somatoform disorder, but he concluded that, taken with all other impairments, it did not meet the severity criteria

of the listings. The ALJ found that despite the somatoform disorder, Weikert retained enough residual capacity to do his past security work. ALJ Decision, slip op. at 4–5.

 "On review of the Secretary's denial of benefits, we must determine whether that decision is supported by substantial evidence on the record as a whole." *Clarke v. Bowen,* 843 F.2d 271, 272 (8th Cir.1988). "In assessing the substantiality of the evidence, we must consider evidence that detracts from the . . . decision as well as evidence that supports it." *Id.* But if there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision. *Id.* at 272–73. The claimant bears the burden of proving he cannot perform his past relevant work. *See id.* at 272.

 In oral argument Weikert's counsel attacked the ALJ's conclusion that Weikert's somatoform disorder did not meet the section 12.07(A) diagnostic criteria or the section 12.07(B) severity criteria.[2]

The diagnostic criterion most closely describing Weikert's condition is: "A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly." Section 12.07(A). The ALJ found this criterion inapplicable to Weikert because "[i]t is unknown whether these symptoms began before age 30." ALJ Decision, slip op. at 4. However, there is abundant evidence in the record that Weikert has had vague physical complaints since childhood, and Dr. Baraga stated that Weikert's history of somatic complaints began in childhood and continued through the present. The ALJ's finding that there was no evidence of somatoform disorder before age 30 is not supported by the record, and Weikert appears to meet one of the section 12.07(A) diagnostic criteria.

---

**2.** The magistrate judge read Weikert's district court filings as primarily attacking the determination that he did not meet the severity criteria of section 12.06 for *anxiety* disorders, not somatoform disorder. Report and Recommendation, slip op. at 8. Weikert did refer to the somatoform disorder, though briefly, in his district court filings.

■ However, the Secretary urges that even if we conclude that Weikert met the diagnostic criteria, we must affirm the decision because all Weikert's impairments in combination did not satisfy the section 12.-07(B) severity criteria. These criteria consist of:

1. Marked restrictions of activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behavior).

Pt. 404, Subpt. P, App. 1, § 12.07(B).

The record supports the ALJ's findings on the severity factors. First, the ALJ found that Weikert's daily activities were not significantly restricted because of the range of hobbies and housework Weikert reported doing. ALJ Decision, slip op. at 4. Weikert argues that he can only perform these hobbies and chores "during limited periods of time." However, even accepting Weikert's testimony completely, he does carry on the activities described in the regulation: "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using telephones and directories, using a post office, etc." Section 12.00(C)1. Despite Weikert's complaints of fatigue and panic attacks and his testimony that he has bad days when all he can do is "read and watch a little TV and take a short walk," he filed forms with the Secretary describing himself as performing housekeeping chores and yard work; shopping; keeping medical appointments; driving; and engaging in a wide range of hobbies, such as photography (including developing pictures), drawing and painting, metalcraft and leathercraft, and playing the piano. At the hearing, he also testified that he uses the public library and public transportation. The record supports the ALJ's conclusion that any impairment of Weikert's ability to participate in the activities of daily living is only slight.

Second, the ALJ found Weikert had a moderate impairment in social functioning. The record reflects that Weikert maintains a group of friends whom he visits with regularly and that he is happily married. The record does not show, nor does Weikert point to, any serious dysfunction in social relationships.

Third, the ALJ found that Weikert has no deficiency in concentration, based on Weikert's ability to concentrate on his hobbies and mental examinations showing he could subtract serial sevens and do other similar tasks. ALJ Decision, slip op. at 4. The record supports these conclusions. Indeed, Weikert testified at the hearing that he was an avid reader of "[a]nything from medicine to technical journals to novels." Such ambitious recreational reading surely corroborates the finding that Weikert has adequate powers of concentration.

Fourth, the ALJ found that Weikert had experienced episodes of deterioration or decompensation in work or work-like settings "once or twice," which is not considered disabling under the listings. Weikert does not dispute this finding before this court.

Accordingly, we must conclude that the ALJ's findings that Weikert does not meet the severity criteria of the mental illness listings is supported by substantial evidence.

■ Weikert's brief also seems to contest the ALJ's finding that Weikert retained the residual capacity to do his prior work as a security guard. Specifically, Weikert argues that the ALJ erred in discounting his testimony that fatigue would keep him from being able to work on a regular basis.

It is important to note that the ALJ did not completely reject the evidence of fatigue; in fact, he took it into account in

asking the vocational expert about part-time employment. The ALJ merely discounted Weikert's testimony about his fatigue, on the grounds that Weikert is active in a wide array of hobbies: "[Weikert] has a dark room where he spends three to four hours at a time producing photos, for pleasure, he watches movies on t.v. and on videotape, plays cards, shops, visits friends and relatives, goes to the library, goes for walks, enjoys painting pictures." Slip op. at 3.

The record bears out the conclusion that Weikert engages in many fairly demanding activities for pleasure, casting doubt on his claims of extreme chronic fatigue. Though at the hearing Weikert claimed he could do these activities for no more than three hours at a time, his wife's statements in the administrative record estimate that he works four hours at a time on his "projects."

The discrepancy between his recreational activity level and his assertions at the hearing provides a sufficient inconsistency to permit the ALJ to discount the testimony, *see Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir.1990), particularly since in this case there have been no findings of physical causes for the fatigue. Moreover, Weikert testified that he worked twelve to fifteen hour shifts in his previous security guard jobs, and yet he did not leave those jobs due to fatigue, but due to dissatisfaction with job assignments, in the one case, and completion of the project he was guarding, in the other.

Weikert also argues that he would not be able to hold any job because he has days about once every two weeks in which he is even less functional than usual, and that the reports from two psychologists showed he was incapable of working. There was evidence to the contrary on each argument.

Taking the record as a whole, there is substantial evidence to support the ALJ's conclusion that Weikert retained sufficient residual capacity to do the security jobs described by the vocational expert.

## II.

Weikert next argues that the ALJ's behavior at the hearing displayed such hostility to Weikert that it deprived Weikert of his right to an impartial hearing.

The Secretary points out that Weikert did not raise the issue of the ALJ's bias against him at the administrative level or in the district court. Weikert did argue before the Secretary that the ALJ improperly refused to permit Weikert to testify about why he could not stand for more than one hour, but the Appeals Council concluded that the ALJ's action was not inappropriate, since Weikert's back and leg problems had been covered earlier in the hearing. At any rate, this particularized complaint does not amount to an allegation of pervasive unfairness. Weikert did not comply with the agency's procedure in the regulations for disqualifying the ALJ for prejudice. 20 C.F.R. § 416.1440 (1991). Since Weikert complains of the ALJ's behavior at the hearing, he clearly had the information he needed in order to object at the Appeals Council stage. *See Grant v. Sullivan*, 720 F.Supp. 462, 469 (M.D.Pa.1989). Weikert's failure to raise the argument at the agency level would ordinarily prevent him from raising it in judicial proceedings. *See Hix v. Director of Office of Workers' Compensation Programs*, 824 F.2d 526, 527 (6th Cir.1987).

Additionally, in the district court Weikert referred to the ALJ's alleged hostility, if at all, in two sentences found within his substantial evidence discussion. We do not believe Weikert adequately raised the bias argument below, and we therefore decline to review this question. *See Clarke v. Bowen*, 843 F.2d at 273.

## III.

We affirm the judgment of the district court.