5 F.3d 545
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Mary Jane BROWN, for Orin B. BROWN, deceased, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 92-5206.
 United States Court of Appeals, Tenth Circuit.
 Aug. 18, 1993.
 
 Before McKAY, Chief Judge, SETH, and BARRETT, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Mary Brown, on behalf of her now deceased husband, Orin Brown (together, claimant), appeals the district court's order of August 25, 1992, affirming the decision of the Secretary of Health and Human Services to deny claimant's request for social security benefits. Claimant raises three issues on appeal: whether the Secretary properly relied on a report from claimant's treating physician, Dr. Pummill, as evidence that claimant could return to his past relevant work; whether the Secretary erred in failing to elicit the testimony of a vocational expert; and whether the Secretary failed to give sufficient weight to a report from Dr. Fish, whom claimant contends was a treating physician. We answer each question in the negative and affirm the denial of benefits.
 
 
 3
 Claimant filed his application for disability benefits on May 15, 1988, alleging he had been disabled since October 15, 1985, as a result of heart problems, loss of hearing, and circulation problems in his feet and legs. The ALJ found that claimant met the earnings requirements for disability insurance benefits through December 31, 1985. The ALJ also found that claimant engaged in substantial gainful activity up until October 15, 1985. Claimant does not dispute either of these determinations. Therefore, claimant had to establish that he became disabled sometime between October 15 and December 31 of 1985 to qualify for benefits. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1347 (10th Cir.1990) (per curiam).
 
 
 4
 Based on the evidence before him, the ALJ concluded that claimant was not disabled as of December 31, 1985. The ALJ found that claimant did not have any impairment or combination of impairments that would significantly limit his ability to perform basic work-related activities during the relevant period and that claimant could perform his past relevant work as a truck driver during the relevant period.
 
 
 5
 Claimant appealed the ALJ's decision to the Appeals Council and submitted additional evidence in the form of a report from Dr. Fish, a cardiologist who examined claimant on August 30, 1990. The Appeals Council considered Dr. Fish's report, as well as the evidence presented to the ALJ, and concluded that Dr. Fish's report did not provide a basis for altering the ALJ's conclusions. The Appeals Council denied the request for review on January 7, 1991, thereby making the ALJ's decision the final decision of the Secretary. The district court affirmed the denial of benefits on August 25, 1992, and this appeal followed.
 
 
 6
 We review the Secretary's decision to determine whether her findings are supported by substantial evidence in the record and whether she applied the correct legal standards. Pacheco v. Sullivan, 931 F.2d 695, 696 (10th Cir.1991). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the Secretary." Id. at 697.
 
 
 7
 The evidence shows that claimant had rheumatic fever as a child, which resulted in chronic heart problems. In 1975, he had surgery to replace the aortic and mitral valves in his heart. Almost all the medical evidence concerning claimant's condition before December 31, 1985, relates to his valve replacement surgery in 1975. The medical evidence concerning claimant's condition during the next ten years is sparse.
 
 
 8
 Claimant consulted with Dr. Sharp, the surgeon who performed the valve replacement operation, in March 1977, who referred him to Dr. Holder for a consultation on claimant's nausea and vomiting subsequent to a leg injury. Dr. Holder suggested that claimant was having an adverse reaction to the pain killers he was taking for his leg injury, and recommended that he discontinue the medication. Claimant also saw an unidentified doctor in January 1981 and February 1983, whose notes reflect little about claimant's condition other than his height, weight, blood pressure, and pulse. In May 1984, claimant saw Dr. Sharp again, complaining of several attacks of numbness on his left side that lasted one to two hours. Claimant also indicated that he experienced shortness of breath, but denied that he had any muscle weakness or vision problems. Dr. Sharp was unsure of the reason for claimant's symptoms, and recommended to claimant's treating physician, Dr. Delfinado, that certain tests be performed. The record is devoid of any further medical evidence until 1986, when claimant saw another unidentified doctor, who wrote claimant prescriptions for various drugs in January and July of that year.
 
 
 9
 In January 1987, claimant began seeing Dr. Pummill, who treated claimant for the next several years. Dr. Pummill examined claimant on January 5, 1987, and certified him qualified to be a driver for a motor carrier pursuant to 40 C.F.R. Secs. 391.41-.49. The ALJ relied on this report and certification in concluding that claimant could perform his past relevant work as a truck driver as late as 1987 and, therefore, was not disabled before December 31, 1985.
 
 
 10
 Claimant challenges the ALJ's reliance on Dr. Pummill's report on several grounds. First, he argues that the report is conclusory, does not report complete test results, and does not explain what Dr. Pummill found claimant qualified to do. Second, claimant contends that the ALJ denied him due process by relying on the report, which the ALJ received after the evidentiary hearing, without giving claimant an opportunity to cross-examine Dr. Pummill as to its contents.
 
 
 11
 Claimant did not raise this due process argument in the district court. We will not consider the argument for the first time on appeal. See Clarke v. Bowen, 843 F.2d 271, 273 (8th Cir.1988); Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir.1987) (per curiam).
 
 
 12
 Claimant's other challenges to Dr. Pummill's report essentially require us to reweigh the evidence. This we cannot do. See Broadbent v. Harris, 698 F.2d 407, 414 (10th Cir.1983) (per curiam) ("The reviewing court cannot weigh the evidence, however, and may not substitute its discretion for that of the agency."). Dr. Pummill's report specifically refers to the regulations regarding medical examinations of drivers employed by motor carriers. These regulations describe what the medical examination must entail and what physical qualifications the driver must meet before the medical examiner may certify him or her as medically eligible to be employed as a driver for a motor carrier. The ALJ properly relied on Dr. Pummill's report and certification in determining that claimant could perform his past relevant work as a truck driver during the time he was insured for disability benefits.
 
 
 13
 Claimant's second contention on appeal is that the ALJ erred in not calling a vocational expert to testify about claimant's ability to work. The Secretary has no obligation to consult a vocational expert until a claimant meets his burden of establishing that he is unable to perform his past relevant work. Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir.1992). Because claimant never met this burden, the ALJ had no obligation to elicit testimony from a vocational expert.
 
 
 14
 Finally, relying on the familiar rule that the Secretary should give substantial weight to the opinion of a treating physician unless good cause is shown to reject it, see, e.g., Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.1984) (per curiam), claimant argues that the Secretary did not give sufficient weight to Dr. Fish's opinion that claimant was disabled in 1985. As an initial matter, we reject claimant's spurious argument that the ALJ's failure to mention the report in his opinion constitutes reversible error. As we noted earlier, Dr. Fish's report was never submitted to the ALJ; it was not prepared until almost a year after the ALJ issued his decision denying benefits. Therefore, the ALJ did not err by failing to mention the report.
 
 
 15
 Secondly, the evidence does not establish that Dr. Fish actually was a treating physician. The record contains only a single opinion letter from Dr. Fish, which he directed "To Whom it May Concern" and wrote while claimant's petition for review was pending with the Appeals Council. The letter indicated that Dr. Fish examined claimant and reviewed at least some of his medical records, but did not suggest any treatment or otherwise indicate that Dr. Fish was following claimant for treatment. The opinion of a nontreating physician who sees a claimant only once, whether at the behest of the Secretary, the claimant, or his attorney, is not entitled to as much weight as the report of a treating physician. See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir.1991).
 
 
 16
 Furthermore, even if Dr. Fish were considered a treating physician, good cause exists for discounting his opinion, based upon his examination in 1990, that claimant was disabled in 1985. In reviewing a treating physician's retrospective diagnosis of a claimant's condition, "the relevant analysis is whether the claimant was actually disabled prior to the expiration of [his] insured status. A retrospective diagnosis without evidence of actual disability is insufficient. This is especially true where the disease is progressive." Potter v. Secretary, 905 F.2d at 1348-49.
 
 
 17
 In his letter, Dr. Fish opined that claimant was disabled for several years before Dr. Fish examined him and that "it is extremely unlikely that he was employable or able to work in 1985." Appellant's App., Vol. II, at 166. Dr. Fish, however, did not describe how the physical condition of claimant's heart in 1990 would have affected claimant's ability to do basic work activities, such as walking, standing, sitting, bending, lifting, pushing, or pulling, in 1985. In addition, the evidence showed that claimant's condition worsened over the years and that he suffered a stroke in 1988. Dr. Fish's conclusory statement that claimant most likely was disabled in 1985 does not constitute substantial evidence of claimant's disability during the relevant period.
 
 
 18
 Based upon our review of the record, we conclude substantial evidence supports the Secretary's conclusion that the claimant was not disabled as of December 31, 1985. Therefore, the judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3